STATE OF NORTH CAROLINA v. MANUEL GONZALEZ-FERNANDEZ,
A/K/A ANGEL LUIS SANCHEZ-PIZARRO

No. COA04-433

(Filed 3 May 2005)

**1. Bail and Pretrial Release— failure to appear—federal incarceration—not extraordinary circumstances**

A bail bond company was not relieved from liability on a bond for extraordinary circumstances where defendant was incarcerated in a federal facility in New York. Defendant was not in federal custody until the day after he was scheduled to appear in court, so that the bonding company was remiss in its custody of defendant, and defendant's federal incarceration resulted from his own misdeeds, from which neither he nor his surety may profit.

**2. Bail and Pretrial Release— failure to appear—efforts by bond company to return defendant—insufficient for extraordinary circumstances**

A bail bond company's efforts to return defendant to North Carolina did not rise to the level of extraordinary circumstances relieving it of liability on the bond.

**3. Bail and Pretrial Release— failure to appear—lack of diligence by bond company—extraordinary circumstances**

A bail bond company's lack of diligence obviated a finding of extraordinary circumstances which would relieve it from liability on the bond.

**4. Bail and Pretrial Release— failure to appear—federal custody—copy of arrest order—not extraordinary circumstances**

A bail bond company was not relieved of liability on a bond for extraordinary circumstances where the Forsyth County Clerk of Court refused to issue a copy of an arrest warrant to be served on defendant in a New York federal detention facility.

**5. Appeal and Error— record on appeal—materials not presented to the trial court—certiorari denied**

A bail bond company's petition for a writ of certiorari to include additional materials in the record on appeal was denied where the documents were not presented to the trial court until after it entered its order settling the record. An abuse of discre-

STATE v. GONZALEZ-FERNANDEZ

[170 N.C. App. 45 (2005)]

tion review cannot be conducted where the materials were not presented to the court before its order.

**6. Appeal and Error— record on appeal—materials excluded—certiorari denied—no judicial notice**

The Court of Appeals could not take judicial notice of materials excluded from the record on appeal after the denial of a petition for certiorari to include the material. The settling of the record on appeal is final and cannot be reviewed except on motion for certiorari.

Appeal by surety from order entered 31 December 2003 by Judge Lawrence J. Fine in District Court, Forsyth County. Heard in the Court of Appeals 11 January 2005.

*Andresen & Vann, by Kenneth P. Andresen and Christopher M. Vann, for surety-appellant.*

*Steven A. McCloskey and Drew H. Davis for Winston-Salem/Forsyth County Schools, judgment creditor-appellee.*

McGEE, Judge.

Capital Bonding Corporation (Capital Bonding) appeals the trial court's order denying its motion for relief from final judgment of forfeiture (motion for relief).

Manuel Gonzalez-Fernandez, a/k/a Angel Luis Sanchez-Pizarro (defendant), was charged with multiple drug offenses on 23 January 2003. Defendant was released on 28 March 2003 on a $500,000 bond for which Capital Bonding acted as surety. Defendant failed to appear for his scheduled court date in Forsyth County District Court on 10 April 2003. The Forsyth County Clerk of Court filed a bond forfeiture notice on 22 April 2003. The forfeiture became a final judgment of forfeiture on 19 September 2003.

Capital Bonding filed a motion for relief on 22 September 2003, along with an affidavit of Capital Bonding employee Timothy Fitzpatrick (Fitzpatrick). Fitzpatrick stated in his affidavit that Capital Bonding learned defendant had fled the jurisdiction "the minute" defendant was released from Forsyth County Jail on the bond.

A hearing on Capital Bonding's motion for relief was held on 16 October and 4 November 2003. Walter Smith (Smith), testified at the

16 October 2003 hearing. Smith stated that he was an employee of Southeast Bail Bonds, the managing body for Capital Bonding's North Carolina bail agents. Smith testified that Fitzpatrick notified Smith of the bond forfeiture on 22 April 2003, the day the clerk of court filed the bond forfeiture notice.

Smith did not take any further action on the matter until 6 May 2003, when he spoke to Fitzpatrick for a second time. Fitzpatrick told Smith that defendant may have been in the custody of the United States Drug Enforcement Administration in San Juan, Puerto Rico. Smith spoke to Fitzpatrick again on 8 May 2003, when Fitzpatrick informed Smith that defendant may have actually been in United States Border Patrol custody in Champlain, New York. Smith then contacted the United States Border Patrol in Champlain. Smith discovered that the United States Marshal in Buffalo, New York took defendant into custody on 11 April 2003 for giving false information. Smith learned from the United States Attorney's Office in Albany, New York that defendant was scheduled to be sentenced to fifty-seven months in federal prison on 6 August 2003. Smith then obtained documentation on 9 May 2003 indicating that defendant attempted to enter Canada, was refused entry, and upon reentry to the United States, was detained by United States Border Patrol in Champlain.

Smith took no further action for almost three months. Smith spoke to the United States Attorney in Albany on 6 August 2003 and learned that defendant had been convicted and sentenced to six months in federal prison, three years of supervised probation, and a one hundred dollar fine.

Smith again refrained from acting on the case until approximately 1 October 2003, two weeks prior to the hearing on Capital Bonding's motion for relief. Smith contacted the United States Marshal and asked to have a North Carolina order for arrest served in New York. A supervisor told Smith that an order for arrest could be served pending extradition. Smith unsuccessfully attempted to obtain a copy of an order for arrest from Forsyth County officials. Smith then learned that upon defendant's release from federal prison in fourteen days, the Immigration and Naturalization Service (INS) would be taking defendant into custody. Smith contacted the Forsyth County Clerk of Court and requested that a copy of the order for arrest be sent to the INS. Smith was again informed that this was possible pending extradition. Smith then had defendant's name placed in the National Crime Information Center database on 9 October 2003 to hold defendant for

extradition. Capital Bonding never produced defendant in Forsyth County District Court.

In an order announced in open court on 4 November 2003 and entered 31 December 2003, the trial court found that Capital Bonding was not entitled to relief from the final judgment of forfeiture. The trial court made the following pertinent findings of fact:

16. [Capital Bonding] had no apparent understanding of how to go about obtaining a Governor's Warrant, or the appropriate steps to be taken to secure [defendant's] appearance pursuant to an extradition proceeding.

17. There was a lack of effort by [Capital Bonding] between the time [Capital Bonding] learned in May, 2003 that [defendant] was in federal custody, and learning of [defendant's] actual sentence in October, 2003.

18. The efforts by [Capital Bonding] and its agents do not rise to the level of extraordinary measures so as to allow the [trial court] to set aside the forfeiture of the bond.

19. There was no evidence that defendant . . . is being held for extradition or that defendant is still in federal custody.

20. Defendant . . . is not within this State's jurisdiction to answer the charges from which he fled.

21. Defendant's misdeeds, which have caused him to be incarcerated in another jurisdiction, do not in and of themselves exonerate [Capital Bonding] from its obligations under the bond.

The trial court then made the following conclusion of law:

[Capital Bonding] has not demonstrated extraordinary circumstances or efforts sufficient to set aside Defendant's bond forfeiture pursuant to N.C. Gen. Stat. § 15A-544.8.

I.

Bail bond forfeiture in North Carolina is governed by N.C. Gen. Stat. §§ 15A-544.1-544.8 (2003). When a defendant is released on a bail bond and fails to appear for a required court date, the trial "court shall enter a forfeiture for the amount of that bail bond in favor of the State against the defendant and against each surety on the bail bond." N.C. Gen. Stat. § 15A-544.3(a). A forfeiture becomes a final judgment

of forfeiture on the 150th day after notice of forfeiture is given, unless a motion to set aside the forfeiture is either entered on or before or is pending on that date. N.C. Gen. Stat. § 15A-544.6. Relief from final judgment of forfeiture is governed by N.C. Gen. Stat. § 15A-544.8, which states:

(a) Relief Exclusive.—There is no relief from a final judgment of forfeiture except as provided in this section.

(b) Reasons.—The court may grant the defendant or any surety named in the judgment relief from the judgment, for the following reasons, and none other:

(1) The person seeking relief was not given notice as provided in [N.C. Gen. Stat. §] 15A-544.4.

(2) Other extraordinary circumstances exist that the court, in its discretion, determines should entitle that person to relief.

In this case, Capital Bonding admits that it was properly given notice of the bond forfeiture under N.C. Gen. Stat. § 15A-544.4. Therefore, Capital Bonding may only obtain relief from the final judgment of forfeiture if extraordinary circumstances exist.

We review a trial court's decision whether to grant a motion for relief from final judgment of forfeiture for an abuse of discretion. N.C. Gen. Stat. § 15A-544.8(b); *see also State v. Coronel*, 145 N.C. App. 237, 243, 550 S.E.2d 561, 566 (2001), *disc. review denied*, 355 N.C. 217, 560 S.E.2d 144 (2002).[1] An abuse of discretion occurs when the trial court's act is " ' "done without reason." ' " *State v. McCarn*, 151 N.C. App. 742, 745, 566 S.E.2d 751, 753 (2002) (citations omitted).

"Extraordinary circumstances" in the context of bond forfeiture has been defined as " 'going beyond what is usual, regular, common, or customary . . . of, relating to, or having the nature of an occurrence or risk of a kind other than what ordinary experience or prudence would foresee.' " *State v. Vikre*, 86 N.C. App. 196, 198, 356 S.E.2d 802, 804, *disc. review denied*, 320 N.C. 637, 360 S.E.2d 103 (1987) (alter-

---

1. We note that, effective 1 January 2001, the previous bond forfeiture statute, N.C. Gen. Stat. § 15A-544 (1999), upon which *Coronel* was decided, was repealed. We also recognize that the time limitations and procedures under the former statute differ from the current N.C. Gen. Stat. § 15A-544.8. Nevertheless, we find the case law interpreting the former statutory terms instructive. Furthermore, in oral argument to this Court, Capital Bonding admitted that the case law interpreting the former statute applies to this case.

ation in original) (quoting *Webster's Third New International Dictionary* (1968)). A determination by our Court of whether circumstances are "extraordinary" is a "heavily fact-based inquiry and therefore, should be reviewed on a case by case basis." *Coronel*, 145 N.C. App. at 244, 550 S.E.2d at 566.

We begin by noting that North Carolina case law has long been clear that the foremost goal of the bond system is the production of the defendant in court. *See, e.g., State v. Robinson*, 145 N.C. App. 658, 661, 551 S.E.2d 460, 462 (2001) (stating that securing the appearance of a defendant "is the primary purpose of the bond system"); *Coronel*, 145 N.C. App. at 247, 550 S.E.2d at 568 ("the court system's paramount concern is ensuring the return of the criminal defendant for prosecution"); *Vikre*, 86 N.C. App. at 199, 356 S.E.2d at 804 ("[t]he purpose of a bail bond is to secure the appearance of the principal in court as required"); *State v. Locklear*, 42 N.C. App. 486, 489, 256 S.E.2d 830, 832 (1979) ("[t]he goal of the bonding system is the production of the defendant"); *State v. Pelley*, 222 N.C. 684, 688, 24 S.E.2d 635, 638 (1943) ("The very purpose of the bond [is] . . . to make the sureties responsible for the appearance of the defendant at the proper time.").

To achieve this goal, bondsmen are vested with broad powers to bring their principals to court. In a landmark decision on the bond system, the United States Supreme Court stated:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. . . . It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Modern it is said: "The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge."

*Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 371-72, 21 L. Ed. 287, 290 (1873) (citations omitted). Our Supreme Court, in setting forth its modern case law, has echoed the tenets espoused in *Taintor*:

Today's commercial bondsmen have retained the same broad common law powers sureties have always enjoyed regarding the custody, control and recapture of the principal.

. . . .

The comprehensive powers of the bondsman recognized in *Taintor* are based on the underlying source of the bondsman's authority to recapture the principal which derives from the contractual relationship between the surety and the principal. Essentially, the bond agreement provides that the surety post the bail, and in return, the principal agrees that the surety can retake him at any time, even before forfeiture of the bond.

*State v. Mathis*, 349 N.C. 503, 509-10, 509 S.E.2d 155, 159 (1998).

With these principles in mind, we now consider Capital Bonding's assignments of error.

## II.

[1] Capital Bonding first argues it should be relieved from liability under the bond because defendant had been in continuous federal custody. Capital Bonding argues that once defendant was in federal custody, Capital Bonding had no means by which to produce defendant in court, and therefore extraordinary circumstances exist justifying relief from forfeiture.

A defendant's imprisonment in another jurisdiction that results in that defendant's failure to appear in a North Carolina court does not relieve a surety from liability on the bond. *Pelley*, 222 N.C. at 689, 24 S.E.2d at 638; *see also Vikre*, 86 N.C. App. at 199-200, 356 S.E.2d at 804-05. In *Pelley*, the defendant had been taken into federal custody three days before he was scheduled to appear in court in North Carolina. 222 N.C. at 685-86, 24 S.E.2d at 636. As a result, the defendant failed to appear for his North Carolina court date and forfeited on his bond. *Id.* at 686, 24 S.E.2d at 636. Our Supreme Court held that the defendant's detention in federal custody did not relieve the surety of liability under the bond. *Id.* at 692-93, 24 S.E.2d at 640. The Court found that, due to the defendant's own wrongdoing, neither the defendant nor the surety should be entitled to relief from the bond:

It matters not whether [the defendant] left the jurisdiction of this State with or without the permission of his sureties, he was entrusted to their custody. His conduct while in their custody set

in motion the machinery of the law in other jurisdictions which made his appearance in [court in North Carolina] on 27 July, 1942, impossible. Had [the defendant] not committed the offenses for which he was tried and convicted in Indiana, and for which he is now imprisoned, he doubtless could have answered to the call of the Superior Court . . . at the proper time. He alone is responsible for his inability to appear in the North Carolina court at the time required in his bail bond. He cannot avail himself of his own wrong and thereby escape the penalty of his bond; and, as stated in *Taylor v. Taintor*, . . . "What will not avail him, cannot avail his sureties."

*Id.* at 692-93, 24 S.E.2d at 640 (quoting *Taintor*, 83 U.S. (16 Wall.) at 374, 21 L. Ed. at 291). *See also Vikre*, 86 N.C. App. at 200-01, 356 S.E.2d at 804-05 (holding that the defendant's incarceration in Mexico resulting in his failure to appear in court in North Carolina did not relieve the surety of liability under the bond, since the defendant's failure to appear was the result "of his own criminal acts rendering him subject to imprisonment pursuant to the criminal laws of another jurisdiction").

We hold that, under *Pelley*, defendant's federal incarceration is not evidence of extraordinary cause meriting Capital Bonding relief from liability under the bond. We first note that defendant, unlike the defendant in *Pelley*, was not in federal custody on the date that he was scheduled to appear in Forsyth County District Court. Rather, defendant was not in federal custody until the day *after* his failure to appear. Therefore, Capital Bonding was remiss in its custody of defendant even prior to defendant's detention in federal custody. Fitzpatrick's affidavit states that Capital Bonding was aware that defendant had left Forsyth County as soon as defendant was released on bond: "In monitoring . . . defendant we learned that the minute that . . . defendant was bonded out of the Forsyth County Jail [defendant] fled the [country][.]" With this information, Capital Bonding had advance notice of its need to exercise its powers and apprehend defendant. By choosing not to act, Capital Bonding consequently risked forfeiture on the bond. Furthermore, like in *Pelley*, defendant's federal incarceration was the result of defendant's own misdeeds, and " '[w]hat will not avail [defendant], cannot avail his suret[y].' " *Pelley*, 222 N.C. at 693, 24 S.E.2d at 640 (quoting *Taintor*, 83 U.S. (16 Wall.) at 374, 21 L. Ed. at 291). Defendant's incarceration in federal prison is not an extraordinary circumstance justifying Capital Bonding relief from the bond forfeiture.

**[2]** We also find that Capital Bonding's efforts in attempting to bring defendant to North Carolina after defendant's failure to appear do not rise to the level of extraordinary circumstances. A surety's efforts to bring a defendant to North Carolina to appear in court are not extraordinary if it was foreseeable that the surety would have to expend those efforts to produce the defendant in court. *Vikre*, 86 N.C. App. at 199, 356 S.E.2d at 804. In *Vikre*, the sureties sought to avoid liability for a bond when the defendant's incarceration in Mexico resulted in his failure to appear for his North Carolina court date. *Id.* at 197, 356 S.E.2d at 803. The sureties argued that they had demonstrated extraordinary cause, since they had sponsored trips to Texas and Mexico looking for the defendant, had "incurr[ed] substantial expenses," and had offered to pay for the defendant's extradition from Mexico to the United States. *Id.* at 197, 356 S.E.2d at 803. Our Court disagreed with the sureties and held that these efforts did not rise to the level of extraordinary cause. *Id.* at 199, 356 S.E.2d at 804. We found that the defendant's out-of-state residency and employment as a pilot made it "entirely foreseeable . . . that the sureties would be required to expend considerable efforts and money to locate [the defendant] in the event he failed to appear." *Id.* at 199, 356 S.E.2d at 804. We also found that extraordinary cause did not exist, despite the sureties' efforts, since the efforts did not ultimately lead to the defendant's appearance in court, "the primary goal of the bonds." *Id.* at 199, 356 S.E.2d at 804.

Under *Vikre*, Capital Bonding's efforts to return defendant to North Carolina are not evidence of extraordinary cause. The Forsyth County District Court's condition of release and release order states that defendant had only resided in the Forsyth County community for three weeks and had previously resided in New York. In addition, defendant's immigration status and previous deportation should have put Capital Bonding on notice that defendant had ties outside of the country. As in *Vikre*, it was entirely foreseeable that Capital Bonding could potentially incur much expense and effort in ensuring that defendant would appear in court. Moreover, Capital Bonding did not expend any efforts in an attempt to bring defendant to court until well after defendant's failure to appear, and the majority of these efforts did not occur until after final judgment of forfeiture on the bond. Finally, like in *Vikre*, Capital Bonding's efforts did not result in defendant's appearance in court in North Carolina. Capital Bonding's efforts do not rise to the level of "extraordinary circumstances."

**[3]** Similarly, Capital Bonding's overall lack of diligence in its efforts to bring defendant before the Forsyth County District Court precludes us from finding that extraordinary circumstances exist. To that end, we find *Coronel* instructive. In *Coronel,* the sureties appealed an order denying their motion to remit judgment of forfeiture. *Coronel,* 145 N.C. App. at 238, 550 S.E.2d at 563. The defendants had failed to appear in court after they had fled to Mexico and had died there in an automobile accident eight months after their failure to appear. *Id.* at 239-40, 550 S.E.2d at 563-64. Our Court found that extraordinary cause did not exist to merit remission of the forfeiture, since the "sureties' pursuit was simply not diligent":

> The key to this conclusion is a complete lack of evidence demonstrating that the sureties were concerned with defendants' 14 December appearance [the date of the failure to appear]. They did not attend court on that date and acknowledged that they had no method of knowing whether defendants attended court. Moreover, they offered no explanation as to why defendants were not in attendance.
>
> Furthermore, sureties subsequently located defendants in Mexico, apparently on trips that did not commence until July 1999. It appears that sureties could have detected defendants' whereabouts much earlier . . . .

*Id.* at 249, 550 S.E.2d at 569.

As in *Coronel,* Capital Bonding has failed to explain why defendant did not appear in court on 10 April 2003, and instead only offers an explanation for defendant's whereabouts *after* this date. Additionally, Capital Bonding made little effort to bring defendant to court until after final judgment of forfeiture was entered, almost six months after defendant failed to appear in court. Capital Bonding's lack of diligence obviates a finding of extraordinary circumstances in this case.

Since defendant's presence in federal custody, Capital Bonding's efforts to obtain defendant, and its lack of diligence do not justify a finding of extraordinary circumstances, we cannot find that the trial court's order denying Capital Bonding's motion for relief was an abuse of discretion.

**[4]** Capital Bonding argues that once defendant was in federal custody, it could have avoided liability under the bond by obtaining a certified copy of the order for arrest and serving it on defendant in the

New York federal facility. Capital Bonding avers that its request for such an order for arrest was denied by Forsyth County officials. Capital Bonding argues that these are extraordinary circumstances meriting relief from liability under the bond.

Capital Bonding's argument is without merit. Under N.C. Gen. Stat. § 15A-544.5(b)(4), a surety may obtain relief from a bond forfeiture, *not* a final judgment of forfeiture, when the defendant has been served with an order for arrest. In this case, Capital Bonding did not attempt to obtain an order for arrest until 1 October 2003, clearly after the final judgment of forfeiture was entered on 19 September 2003. Capital Bonding's argument must therefore fail.

Furthermore, even if appellant's attempts to obtain an order for arrest had been timely, the Forsyth County Clerk of Court properly denied Capital Bonding's request for an order for arrest. N.C. Gen. Stat. § 15A-301(b) (2003) provides that "[w]arrants for arrest and orders for arrest must be directed to a particular officer, a class of officers, or a combination thereof, having authority and territorial jurisdiction to execute the process." For the purposes of this statute, "officer" is defined as "law-enforcement officer." N.C. Gen. Stat. § 15A-101(6) (2003). The record reveals that Capital Bonding's attorney, Lawrence Grayson (Grayson), made the request for an order for arrest. The Forsyth County Clerk of Court therefore complied with the statutory mandate in denying Capital Bonding's request, since Grayson was not a law enforcement officer.

III.

**[5]** We next consider Capital Bonding's petition for writ of certiorari to include additional material in the record on appeal. Specifically, Capital Bonding seeks to include the following documents in the record: a 28 October 2003 indictment from the Middle District of North Carolina, indicting defendant on the federal counterparts to the state drug offenses defendant was originally charged with on 23 January 2003; the Forsyth County District Attorney's dismissal of the state charges against defendant, dated 6 November 2003; and a recall of defendant's order for arrest dated 6 November 2003. Capital Bonding had originally included these materials in its proposed record on appeal, but the trial court sustained Winston-Salem/Forsyth County Schools' objection to these materials, in accordance with the Rules of Appellate Procedure in effect at the time.[2]

---

2. Former N.C.R. App. P. 11(c), which permitted an appellant to request that the trial court settle a record on appeal when the parties were unable to agree on the con-

We recognize that "a challenge to the trial court's settlement [of a record] may be preserved by an application for certiorari *made incidentally* with the perfection of the appeal upon what record there is." *Craver v. Craver*, 298 N.C. 231, 237, n. 6, 258 S.E.2d 357, 361, n. 6 (1979). However, the documents that Capital Bonding seeks to include in the record were never presented to the trial court until after it entered its order. We cannot conduct an abuse of discretion review of a trial court's order based on materials that were never made available to the trial court. We also recognize that Capital Bonding had the opportunity to bring these materials to the trial court's attention while the case was still within the trial court's jurisdiction. The indictment was filed 28 October 2003, prior to the trial court's announcement of its order denying Capital Bonding's motion for relief on 4 November 2003. The dismissal and recall of order for arrest are dated 6 November 2003, just two days after the trial court's announcement of its order and well before both this order was entered on 31 December 2003 and Capital Bonding's notice of appeal was given on 2 January 2004. Capital Bonding did not make a motion pursuant to either North Carolina Rule of Civil Procedure 59 or 60 to bring this material to the trial court's attention, but rather sought to bring this material to light for the first time while this case was already pending on appeal. *See* N.C. Gen. Stat. § 1A-1, Rules 59 and 60 (2003). We find that this is further evidence of Capital Bonding's lack of diligence and deny Capital Bonding's petition for writ of certiorari.

**[6]** Finally, we note that in its petition for writ of certiorari, Capital Bonding asserts that this Court can take judicial notice of the indictment, dismissal of charges, and recall of order for arrest. However, we have held that this "Court may not take [judicial] notice of matters *excluded* from the record [on appeal], since the order settling the record on appeal is final and cannot be reviewed on appeal except on motion for certiorari." *Coiner v. Cales*, 135 N.C. App. 343, 346, 520 S.E.2d 61, 63 (1999) (citing *State v. Johnson*, 298 N.C. 355, 372, 259 S.E.2d 752, 763 (1979)). Since this material was excluded from the record and we have denied Capital Bonding's petition for writ of certiorari to include this material in the record, we may not take judicial notice of this material.

---

tents of the record, was in effect on 19 March 2004, when the trial court entered an order settling the record on appeal in this case. However, this provision has been superseded by the new N.C.R. App. P. 11(c), effective 12 May 2004.

Capital Bonding has failed to present any argument in support of its remaining assignments of error. They are therefore deemed abandoned. N.C.R. App. P. 28(b).

Affirmed.

Judges WYNN and TYSON concur.