2015 VT 81
 








State v. Mottolese (Allstate Bail
Bonds, Appellant) (2014-245)


 


2015 VT 81


 


[Filed 12-Jun-2015]


 


NOTICE:  This opinion is subject
to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont
Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors
in order that corrections may be made before this opinion goes to press.










 
 

 
 
 2015 VT 81

 

 

 



 




 
 

 
 
 No. 2014-245

 

 

 



 




 
 

 
 
 State of Vermont

 

 
 
 Supreme Court

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
 On Appeal from

 

 

 

 
 
      v.

 

 
 
 Superior Court, Bennington Unit,

 

 

 

 
 
  

 

 
 
 Criminal Division

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
 Joseph Mottolese

 
 (Allstate Bail Bonds, Appellant)

 

 
 
 November Term, 2014

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
 Nancy
 Corsones, J.

 

 

 

 
 
  

 

 

 



Alexander Burke, Bennington County Deputy State’s Attorney,
Bennington, for


  Plaintiff-Appellee.


 


James A. Valente of Costello, Valente & Gentry, P.C.,
Brattleboro, for Appellant


  Allstate Bail Bonds.


 


 


PRESENT:    Reiber, C.J., Dooley, Skoglund, Robinson and
Eaton, JJ.


 


 


¶ 1.            
SKOGLUND, J.   Appellant Allstate Bail Bonds (“Allstate”) challenges
the trial court’s decision granting the State’s motion for forfeiture of bond.  On
appeal, Allstate argues that the trial court abused its discretion in declining
to reduce the amount of bail forfeiture when Allstate could not produce defendant
due to his out-of-state incarceration.  We agree that Allstate is entitled to a
reduction in bail forfeiture, and therefore reverse.


¶ 2.            
On June 17, 2013, defendant was arraigned for grand larceny and
possession of stolen property.  Two days later, the court set bail at
$35,000.  Defendant posted bail on July 2, 2013 through a bond procured from
Allstate.  Allstate delivered a surety bond for defendant and signed a “Surety
Bond” contract with the State, which provides in relevant part:


In
order to secure the defendant’s release I/we, the undersigned, do voluntarily
agree to act as surety for the defendant and to become firmly bound to the
Court to guarantee the appearance of the defendant at all required court
proceedings, including execution of sentence. I/We, the undersigned, understand
that as surety it is my/our responsibility to know when and where the defendant
is to appear.


 


As a condition of his release, defendant
could reside in his home state of New York.  


¶ 3.            
On January 10, 2014, defendant was incarcerated in New York on separate
charges.  As a result of his incarceration, defendant failed to appear at
Bennington Superior Court for final calendar call on February 4, 2014, a
required appearance.  The next day, the court issued a warrant for defendant’s
arrest.  On March 11, 2014, the State of Vermont filed a motion to
forfeit bail due to defendant’s failure to appear.  See 13 V.S.A.
§ 7560a(a)(2)(A).  A hearing on the motion was held March 25, 2014, but
after Allstate suggested it would seek a surety warrant, the court continued
the hearing to May.  Soon after, Allstate requested a surety
warrant, seeking to collect defendant upon release in New York and return him
to Vermont.  See 13 V.S.A. § 7562.  On May 2, 2014, the court denied the
request, stating that under State v. Marsh, 173 Vt. 531, 789 A.2d 939
(2001) (mem.), the court had no authority to issue a surety warrant when
defendant was incarcerated at the time Allstate made its request.  


¶ 4.            
On May 29, 2014, the court held the second hearing on the State’s motion
to forfeit bail.  Again, defendant did not appear due to being
incarcerated.  Allstate moved for a reduction in forfeiture to an amount
consistent with the cost of extradition.  See 13 V.S.A. §§ 7560a(d), 7570.[1]
 The State contested that a reduction would ignore Allstate’s obligation to
secure defendant’s appearance in court.  


¶ 5.            
On June 17, 2014, the court ordered full forfeiture, finding that defendant’s
incarceration did not justify relief from forfeiture.  It explained that “[i]f
the [c]ourt limited the Surety’s obligation to paying for transportation costs,
then it would leave the State with the burden of finding Defendants and
ensuring they attend court proceedings,” and “doing so would erode the
obligations of the Surety.”  Allstate appeals the order, requesting
return of its forfeited security less the costs of extradition.  We reverse the
trial court’s order because, as we explain below, an examination of the
totality of circumstances through factors relevant to forfeiture reveals that denial
of a reduction in forfeiture was inappropriate and would not shape the behavior
of future bail-bond sureties in a way the Legislature intended.


¶ 6.            
We review a trial court's decision to forfeit bail for an abuse of
discretion.  See State v. Brown, 2005 VT 104, ¶ 10, 179 Vt. 22, 890
A.2d 79.  Abuse of discretion requires a showing that the trial court withheld
its discretion entirely or that it was exercised for clearly untenable reasons
or to a clearly untenable extent.  State v. Hutchins, 134 Vt. 441, 443,
365 A.2d 507, 508 (1976).  We must also examine the trial court’s
interpretation of Vermont’s bail statutes and correlated case law.  On such
questions of law, our review is de novo.  In re T.S.S., 2015 VT 55, ¶ 15,
___ Vt. ___, ___ A.3d ___.  


¶ 7.            
This Court has not squarely addressed whether a bail-bond surety is
entitled to relief from full liability where a defendant's appearance is
prevented by incarceration in another jurisdiction, so we first look to our
existing case law on the general rights and responsibilities of bail-bond
sureties, and then to other jurisdictions that have answered this precise
question.


¶ 8.            
We have said that “the sole constitutionally legitimate purpose of
monetary conditions of release is to provide ‘additional assurance of the
presence of the accused.’ ”  State v. Cardinal, 147 Vt. 461, 464,
520 A.2d 984, 986 (1986) (quoting Stack v. Boyle, 342 U.S. 1, 5
(1951)).  Under our policy, forfeiture of bail exists not as a punitive tool,
“but rather to assure that the defendant will appear at court when required.”  Id. 
As such, bail may not be forfeited for breach of conditions other than
appearance, 13 V.S.A. § 7560a(f), because doing so “transforms monetary bail
from a guarantor of appearance into a potentially punitive tool useful in the
enforcement of all bail conditions.”  Cardinal, 147 Vt. at 464, 520 A.2d
at 986.


¶ 9.            
We assign significant importance to the preservation of the right to
bail.  “The traditional right to freedom before conviction permits the
unhampered preparation of a defense, and serves to prevent the infliction of
punishment prior to conviction.”  Stack, 342 U.S. at 4 (citing Hudson
v. Parker, 156 U.S. 277, 285 (1895)).  The State should encourage bondspersons
to enter into bail contracts to facilitate the release of defendants whose
guilt has yet to be determined and to relieve the State of the cost of
providing for defendants while in jail.  On the other hand, reducing the amount
of forfeiture where a bail-bond company has failed to ensure a defendant’s
appearance could erode sureties’ obligations, as was the trial court’s concern. 
Balancing these considerations thus requires weighing the particular facts of
each case.


¶ 10.        
This Court’s most factually analogous case to the one at hand is State
v. Marsh, 173 Vt. 531, 789 A.2d 939.  There, the trial court scheduled an
emergency appearance on one day’s notice, which the defendant missed, and the
court issued a warrant for his arrest.  Texas authorities arrested the
defendant later that day.  In affirming forfeiture of defendant’s bail,
this Court maintained that defendant’s incarceration in Texas did not prevent
him from appearing at his hearing in Vermont because he was not arrested until
hours after his scheduled hearing.  Id. at 533, 789 A.2d at 942.


¶ 11.        
We distinguished the surety’s position in Marsh from that
where a defendant is “prevented from appearing [by an] ‘act of the law.’ ”  Id.
(quoting Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 369
(1872)) (citing United States v. Egan, 394 F.2d 262, 265-66
(2d Cir. 1968)).  But we did not distinguish between an act of law of Vermont
and that of another state.  Rather, we implied that if the defendant had been
incarcerated in Texas prior to his appearance, the bail-bond surety may have
been entitled to relief.  Id.  


¶ 12.        
It is generally accepted that an act of law of the bailing state that
prevents the defendant’s appearance entitles the surety to relief from full
forfeiture.  See, e.g., Taylor, 83 U.S. at 369; Commonwealth v.
Stuyvesant Ins. Co., 321 N.E.2d 811, 815-16 (Mass. 1975); State v.
Gonzalez, 174 A.2d 209, 212 (N.J. Super. Ct. App. Div. 1961).  There is
disagreement, however, as to whether forfeiture is appropriate where the act of
law is of another state.  Nearly 150 years ago, in Taylor, the United
States Supreme Court held that the bail-bond surety on a Connecticut appearance
bond was not relieved of liability when the defendant voluntarily went to New
York, from where he was taken and delivered to Maine authorities.  83 U.S. at
372-73.  The Court noted that, had the defendant been delivered to the Maine
authorities by the State of Connecticut, the surety would have been released.  Id.
 As a strong second ground for its conclusion, the Court emphasized that the bail-bond
surety, who retained the authority to control the defendant, negligently
allowed him to leave the jurisdiction and place himself beyond its authority.  Id.
 


¶ 13.        
While thirteen states retain the rule under Taylor that a bail-bond
surety is not entitled to relief from liability where a defendant's appearance
is prevented by incarceration in another jurisdiction,[2]
more have rejected it.  The legislatures of fifteen states have established
explicitly by statute that a bail-bond surety is, or at least may be, entitled
to relief from liability where a defendant's appearance is prevented by
incarceration in another jurisdiction.[3]
 The courts of another seven states, pursuant to bail statutes similar to ours,
have held that sureties were entitled to relief under such circumstances.[4] 



¶ 14.        
Federal courts since Taylor have taken a multi-factor approach to
determinations of bail forfeiture.  The relevant federal rules provide that “[t]he
court must declare the bail forfeited if a condition of the bond is breached,”
F.R.Cr.P. 46(f)(1), but that “[t]he court may set aside in whole or in part a
bail forfeiture” if “it appears that justice does not require bail forfeiture,”
 F.R.Cr.P. 46(f)(2).  The United States Court of Appeals for the D.C. Circuit,
in reviewing a substantially similar earlier version of those rules, noted that
“[t]he mandatory quality of 46[(f)](1) is . . . considerably
tempered by the discretion and flexibility contained in 46[(f)](2).”  United
States v. Nell, 515 F.2d 1351, 1353 (D.C. Cir. 1975).  That court found relevant
to the exercise of discretion factors such as the willfulness of the
defendant's breach, the participation of the bondsperson in locating or
apprehending the defendant, and the prejudice suffered by the government by the
breach of the bond conditions.  Id.; see also United States v.
Gambino, 17 F.3d 572, 574 (2d Cir. 1994) (relying on similar set of
factors); United States v. Abernathy, 757 F.2d 1012, 1015 (9th Cir.
1985) (same).  Federal courts also weigh in favor of relief the fact that a
defendant eventually appears.  See, e.g., United States v. Bass, 573
F.2d 258, 260 (5th Cir. 1978).  Indeed, the amount of forfeiture should “bear
some reasonable relation to the cost and inconvenience to the government of
regaining custody [of the defendant].”  United States v. Kirkman, 426
F.2d 747, 752 (4th Cir. 1970).  Various state courts, interpreting language
comparable to that of Rule 46(f), have suggested additional factors, such as
the public’s interest in ensuring a defendant’s appearance and the value of
deterrence.  See State v. Fry, 910 P.2d 164, 168 (Idaho Ct. App. 1994); Commonwealth
v. Hann, 81 A.3d 57, 67-68 (Pa. 2013) (citing State v. Korecky, 777
A.2d 927, 934 (N.J. 2001)); see also People v. Escalera, 121 P.3d 306,
308 (Colo. App. 2005); Ex parte Polk, 579 S.E.2d 329, 331 (S.C. Ct. App.
2003).


¶ 15.        
The language of 13 V.S.A. § 7560a is akin to that found in Rule 46(f). 
The mandatory quality of “shall grant the motion to forfeit” is
similarly tempered by the discretionary language contained in “[t]he court may . . . adjust
the amount of the forfeiture.”  13 V.S.A. § 7560a(d) (emphases
added).  And § 7570 mirrors Rule 46(f)(2)(B) almost exactly.  In relevant
part, it states, “If the court finds the interests of justice would be served
by returning all or part of the security, the court may grant the motion and
return as much of the security as it deems equitable under the circumstances.” 
Id. § 7570.  


¶ 16.        
We therefore turn to the factors discussed above, but are mindful that no
one factor should control.  A court’s discretion in forfeiting bail “should not
be limited by an absolute rule regarding incarceration in another
jurisdiction.”  Fry, 910 P.2d at 167 (interpreting statutory language
similar to that of Vermont’s bail-forfeiture framework).  Instead, forfeiture
decisions should be based upon an examination of the totality of the
circumstances.  Hann, 81 A.3d at 67 (citing State v. Torres, 87
P.3d 572, 583 (Okla. 2004)).  Most importantly, these factors can be used only to
determine the amount of forfeiture of bail, if any, appropriate to ensure that
bail-bond sureties uphold their duties in good faith, and not as a punitive
tool.  Cardinal, 147 Vt. at 466, 520 A.2d at 987.


¶ 17.        
First, we agree with other courts holding that failure to appear due to incarceration
is not willful, either on the part of the defendant or the surety, where the
incarceration does not result from fleeing the jurisdiction.  E.g., United
States v. Nash, 429 F.2d 533, 534 (8th Cir. 1970); Diaz, 286 P.3d at
835.  There is no evidence in the record that defendant was on the run or that
he would have failed to appear at his hearings in Vermont but for his
incarceration at the time he was due to appear.  See State v. Two Jinn, Inc.,
245 P.3d 1016, 1019 (Idaho Ct. App. 2010) (recognizing ceased payment for
alcohol-monitor, failure to download monitor’s data, and fleeing to another
jurisdiction as evidence of willfulness).  While defendant may have knowingly
or intentionally committed a criminal act, the consequences of which placed him
in a New York jail, the record contains nothing to indicate that his actions in
New York were intended to avoid his appearance in the Vermont court.  Also, we
note, defendant’s conditions of release allowed him to reside in New York, his
home state.  Moreover, as the State conceded at oral argument, Allstate had no
duty to supervise defendant—its role, defined by statute and contract, was
limited to ensuring defendant appeared in court when required.  It would be a
perversion of our bail policy, a misreading of the surety-bond contract, and an
unreasonable imposition to require a surety to intrude upon the private life of
a defendant to such an extent as to monitor his every movement and restrain him
from partaking in illegal activity.  Thus, the willfulness factor weighs in
favor of relief from full forfeiture.


¶ 18.        
Allstate also attempted to use available procedures to retrieve defendant. 
There is no evidence of bad faith on the part of Allstate.  The New Mexico
Supreme Court considered an apposite case with less favorable facts, and
reached the same conclusion with respect to participation and good faith of the
surety.  Amador, 648 P.2d at 313.  The bail-bond surety in Amador
did not know the defendant’s whereabouts until well after his nonappearance at
trial.  It was not until the court served the surety with an order to show
cause that the surety first learned of the defendant's failure to appear.  When
the surety later learned that the defendant was incarcerated in Texas, it
offered to pay all reasonable extradition and transportation costs incurred by
the State.  The court held that the surety did all it could to secure the
defendant's presence and insure the state against its monetary loss.  Id. 
Further, it held that the State was not unduly prejudiced by the defendant’s
failure to appear because he could be returned to New Mexico upon release.  Id.
 


¶ 19.        
We find Allstate’s subsequent participation and the absence of any
disagreement regarding defendant’s whereabouts similarly compelling.  As
evidenced by its request for a surety warrant pursuant to 13 V.S.A. § 7562,
Allstate was prepared to take defendant into custody in New York and bring him
back to Vermont.  However, the State placed a detainer on defendant, and the
trial court denied Allstate’s request, leaving Allstate powerless to recover
him.  Even still, throughout the hearings on forfeiture, and on appeal,
Allstate offered to defray all costs and expenses involved in returning defendant
to Vermont.  It was a physical and legal impossibility for Allstate to take
possession of him as long as he was incarcerated in New York.  See Allison,
286 P.2d at 1105.  Thus, Allstate’s cooperation in attempting to secure defendant’s
presence in court weighs in favor of relief from full forfeiture.


¶ 20.        
The prejudice suffered by the State due to defendant’s failure to appear
was minimal.  To be sure, one of the main purposes of a bail agreement between
a surety, a defendant, and the State is to ensure that the defendant appears at
court when required.  Cardinal, 147 Vt. at 464, 520 A.2d at 986. 
Allstate did not fulfill its obligation to produce defendant at the final
calendar call and failed to notify the court of his incarceration prior to that
appearance.  Yet, it is unlikely that anything would have changed had the court
known of defendant’s incarceration a month earlier.  Defendant may well have missed
the same hearings, causing the same delays.  Thus, the prejudice to the State
from his failure to appear amounts to a short delay in trial proceedings and
the expenses associated with extradition.


¶ 21.        
Finally, we address the trial court’s rationale for forfeiting bail and
the value of deterrence.  The court concluded that reducing the forfeiture
amount would leave the State with the burden of finding defendants and ensuring
they attend court proceedings.  We disagree.  First, while it may have been
difficult in the past for a bailing state to re-obtain custody of a defendant
who was incarcerated in another jurisdiction, the modern system of placing
detainers against a defendant being held in another jurisdiction has greatly
simplified the process of achieving custody.  Indeed, the trial court
acknowledged that it “will recover Defendant.”  Secondly, it is important for
the court to consider deterrence, but once defendant was incarcerated, Allstate
was powerless to ensure his appearance in court.  Moreover, Allstate had no
duty to supervise defendant.  Any forfeiture amount above the costs associated
with extradition and delayed trial would therefore serve only to punish
Allstate—a result we have long proscribed.  Cardinal, 147 Vt. at 464, 520
A.2d at 986.


Reversed and remanded for a
calculation of the costs and expenses associated with extradition and delayed
trial.  Upon calculation, the court shall remit the forfeiture to Allstate less
these amounts.


 


 




 
 

 
 
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
 Associate
 Justice

 

 

 



 


 


 


 


 












[1] 
Section 7560a(d) of Title 13 provides:


 


  If the Court
finds that the surety has violated the terms of the bond by failing to produce
the principal at the hearing or at any other court appearance at which the
principal was required to appear, the court shall grant the motion to forfeit
the bond. The court may, on motion, or on its own motion, adjust the amount of
the forfeiture and order the forfeiture of all or part of the bond amount to
the State.


 


Section 7570 provides: 


 


  A surety may
file a motion requesting the return of forfeited bail, bond or any other
security at any time after the order of forfeiture is entered. . . . If
the court finds the interests of justice would be served by returning all or
part of the security, the court may grant the motion and return as much of the
security as it deems equitable under the circumstances.


 


Although the trial court discussed only § 7560a, we
examine § 7570 as well because we construe Allstate’s counsel’s request—at
the bail-forfeiture hearing—for less than full forfeiture as equivalent to a
motion to remit forfeiture under § 7570.  







[2] 
Alabama (See ABC Bonding Co. v. State, 641 So. 2d 805, 806-07 (Ala. Civ.
App. 1994).  But see Swift v. Esdale, 306 So. 2d 268, 272-73 (Ala. 1975)
(affirming trial court’s discretionary decision to remit forfeiture where
bondsmen retrieved defendant from out-of-state prison and returned him to
custody of bailing state after he had missed court appearance)); Connecticut (State
v. Sheriff, 21 A.3d 808, 813-14 (Conn. 2011)); Delaware (State v.
Mitchell, 212 A.2d 873, 885-86 (Del. Super. Ct. 1965)); Illinois (People
v. Brautigan, 399 N.E.2d 183, 186 (Ill. App. Ct. 1979)); Maine (State v.
Altone, 35 A.2d 859, 860-61 (Me. 1944); Michigan (People v. McCracken
161 N.W.2d 758, 759 (Mich. Ct. App. 1968)); Nebraska (King v. State, 25
N.W. 519, 526 (Neb. 1885)); New Hampshire (State v. McGurk, 44 A.3d 568,
571 (N.H. 2012)); New Jersey (State v. Fields, 347 A.2d 810, 811 (N.J.
Super. Ct. App. Div. 1975)); North Carolina (State v. Gonzalez-Fernandez,
612 S.E.2d 148, 153 (N.C. Ct. App. 2005)); Oregon (Umatilla Cnty. v.
Resolute Ins. Co., 493 P.2d 731, 732-33 (Or. Ct. App. 1972) (emphasizing
that surety not entitled to relief if incarceration is for crime committed by
defendant after his release on bail)); Tennessee (Wallace v. State, 269
S.W.2d 780, 784 (Tenn. 1954)); and West Virginia (State v. Douglas 112 S.E.
584, 586-87 (W. Va. 1922)).  


 







[3] 
Arizona (Ariz. R. Crim. P. 7.6(d)(2)); Arkansas (Ark. Code Ann. § 16-84-203(a));
California (People v. Lexington Nat’l Ins. Corp., 181 Cal. Rptr. 3d 469,
473-74 (Cal. Ct. App. 2010); Cal. Penal Code § 1305(f)); Florida (Dolly
Bolding Bail Bonds v. State, 787 So. 2d 73, 73-74 (Fla. Dist. Ct. App.
2001); Fla. Stat. Ann. § 903.26(5)(b)); Georgia (Stitt v. Busbee,
220 S.E.2d 59, 59-60 (Ga. Ct. App. 1975) (interpreting prior version of Ga.
Code Ann. § 17-6-72(b)); Indiana (Larkins v. State, 622 N.E.2d
1299, 1301 (Ind. Ct. App. 1993); Ind. Code Ann. § 27-10-2-12(b)(2)(A)(ii));
Kansas (Kan. Stat. Ann. § 22-2807(3)); Louisiana (State v. West, 384 So.
2d 784, 785-86 (La. 1980) (interpreting prior version of La. Code Crim. Proc.
Ann. art. 349.9(A)(2)); Maryland (Irwin v. State, 302 A.2d 688, 691-92
(Md. 1973) (interpreting prior version of Md. Rule 4-217(i)(6)); Mississippi (Wood
v. State, 345 So. 2d 616, 617-18 (Miss. 1977); Miss. Code Ann. § 83-39-7);
Montana (Mont. Code Ann. § 46-9-503(4)); Oklahoma (State v. Mauldin,
602 P.2d 644, 646-47 (Okla. 1979); Okla. Stat. Ann. tit. 59, § 1332(C)(5)(b));
Texas (Tex. Code Crim. Proc. Ann. art. 22.13(a)(5)); Utah (Utah Code Ann.
§ 77-20b-104(4) (“[I]f the defendant is in the custody of another
jurisdiction and the state extradites or intends to extradite the defendant,
the court may reduce the amount forfeited to the . . . costs
of returning the defendant to the court’s jurisdiction.”)); and Virginia (Va.
Code Ann. § 19.2-143).  


 







[4] 
Colorado (Allison v. People, 286 P.2d 1102, 1104-06 (Colo. 1955) (en
banc), whose rule was later codified in Colo. Rev. Stat. 16-4-110, as
recognized by People v. Haghshenas, 31 P.3d 180 (Colo. App. 2001));
Hawaii (State v. Diaz, 286 P.3d 824, 835 (Haw. 2012)); New Mexico (State
v. Amador, 648 P.2d 309, 313 (N.M. 1982)); North Dakota (State v. Williams,
189 N.W. 625, 626 (N.D. 1922)); Ohio (State v. Yount, 2008-Ohio-1155,
¶ 14, 889 N.E.2d 162 (Ohio Ct. App. 2008)); Pennsylvania (Commonwealth
v. Roeschetz, 2 Pa. D. & C.2d 168, 170-71 (Pa. Quar. Sess. 1954) (trial
court exercising its discretion to remit forfeiture minus costs of
transportation where surety placed detainer against defendant, who was
incarcerated out of state)); and Washington (State v. Heslin, 389 P.2d
892, 895 (Wash. 1964) (holding that defendant’s detainment in different
jurisdiction was sufficient explanation to prevent bond forfeiture)).