# CHARLESTON.

## STATE v. ANNIE M. AND R. C. DOUGLAS.

Submitted May 9, 1922.    Decided June 2, 1922.

BAIL—*Sureties Liable on Recognizance, Where Permitting Principal to Escape to Other State, Where He was Convicted of Crime and Imprisoned.*

If one accused of crime committed in this state be let to bail and fail to appear at the time and place to which he was recognized, and has been allowed by his sureties to go or escape into another state, and after the time of his default to be there arrested, tried, convicted and imprisoned for a crime committed in that state, and his production to answer the charges preferred against him thereby rendered impossible, such facts, in the absence of disclosure of any diligence on the part of the sureties to prevent his escape or any effort to discover his whereabouts or recapture him, until long after the date at which his appearance was required, will constitute no defense to an action or scire facias against his sureties on such recognizance, nor entitle them to be released in whole or in part from the penalty prescribed.

Error to Circuit Court, Upshur County.

Proceeding by the State of West Virginia against Annie M. and R. C. Douglas for writ of scire facias on a recognizance of bail, in which R. W. Brake was the principal. From an order in favor of the State, defendants bring error.

*Affirmed.*

*J. M. N. Downes,* for plaintiffs in error.

*E. T. England,* Attorney General and *R. A. Blessing,* Assistant Attorney General, for the State.

MILLER, JUDGE:

To a writ of scire facias upon a recognizance of bail the defendants as obligors appeared and tendered their joint plea to the effect that subsequent to their entering into the recognizance R. W. Brake, the principal therein, in June 1920, was arrested in Calackamas County, in the State of Oregon, upon a warrant charging him with murder in that county and was confined in the jail of that county and of

Multnomah County, until September 20, 1920, when he was tried and convicted of murder in the second degree and sentenced to confinement in the penitentiary of that state for the period of his natural life, and was on the same date delivered to and removed into the penitentiary of that state, where he is now serving his life sentence, by reason whereof the defendants aver they now are and have been unable to deliver him to the court in discharge of their recognizance.

They further averred that it was their intention to have returned and delivered said Brake, and that they were making preparations to that end when he was arrested on the warrant aforesaid, which resulted in his trial, conviction, sentence and confinement in the penitentiary of the State of Oregon; and they exhibited with this plea an exemplified transcript of the record of said conviction and sentence, and averred that by reason of the matters set out in their plea they should be discharged from said recognizance and that the demand of the writ for award of execution thereon should be refused.

Upon the trial of said plea and the objections of the State thereto, the court below was of opinion, notwithstanding the facts averred in the plea, that the State was entitled to have execution upon said recognizance against the defendants, and pronounced the judgment thereon now complained of, the sum awarded being for $500.00, and the costs incurred on the trial.

As a basis for their plea defendants appeal to section 9, chapter 162 of the Code, which is as follows: "When, in an action or scire facias on a recognizance, the penalty is adjudged to be forfeited, the court may, on application of a defendant, remit the penalty, or any part of it, and render judgment on such terms and conditions as it deems reasonable." This section of our statute is substantially the same as that of the Virginia Code of 1860, with the exception that the Virginia statute then required the consent of the prosecuting attorney. Similar statutes with slight differences in verbiage have been enacted in other states, notably Kentucky, North Carolina and Alabama. And a statute of the

United States is of similar import. 1 Fed. Stat. Ann., Sec. 1020. Whether these statutes enlarge, and to what extent, or are merely declaratory of the common law, we need not now determine, but if merely declaratory of the common law, well recognized canons of construction say they should not be construed to enlarge the common law unless the plain provisions thereof require such construction. *State ex rel. Morris* v. *Sullivan,* 81 Ohio St. 79, 26 L. R. A. (N. S.) 514, and authorities cited; Endlich on Interp. of Stat., section 127, page 172; *Reeves & Co.* v. *Russell,* (N. D.), L. R. A. 1915D, 1149.

In the case lastly cited the court says: "Unless otherwise provided by statute, all statutes are to be interpreted in the light of the common law with reference to the principles of the common law in force at the time of their passage." In 3 Am. & Eng. Enc. Law, (2nd ed.), 724, it is said: "In England the power of the court of exchequer, into which forfeited recognizances were estreated for judgment to remit or compromise the penalty, has been generally regarded as having been conferred by statutes 33 Henry VIII., c. 39, and 4 George III., c. 10." But Chief Justice Marshall, considering this question in 1813, in *United States* v. *Feeley et al.,* U. S. Cir. Ct. Rep., 1 Brockenbrough, 255, says that while the English statutes conferred the power upon the court of exchequer only, the same power, which in England and in the United States had long been exercised by the common-law courts was derived not from the statute, but from the common law. At page 258 he says: "In the United States there is no separate court of exchequer; and recognizances are put in suit in that court in which they are originally filed. They are never estreated. The power which the courts of law in England exercise on the question, whether a recognizance shall be estreated or not, is exercised after default, and continues so long as the recognizance remains in court. It is dependent on the discretion of the court, and, according to Hawkins, is applied in relief of the cognizor, if the person who has forfeited it, shall appear at the next succeeding term and take his trial. The same power existing in this Court may, it would seem, as in England, be exercised so long as

the recognizance continues in court. If, when the default was recorded, it had been shown to the Court that the accused was in custody of the law, then, according to the case in 11th Mod., the court might have extended the recognizance. Why may not the excuse be made as effectually at a subsequent day? The case of *Rex* v. *Eyres and Bond,* 4 Burrows 2118, is also reported in a very unsatisfactory manner. It is not improbable that the case had been compromised in the court of exchequer. There is too much uncertainty in the report to rely much on it.'' The case then before the court was a motion to stay proceedings on a scire facias, and the court asserting its power and authority independently of statute, ordered the proceeding to be stayed until it should appear whether the accused should continue to submit himself to the law, or should attempt to evade the justice of the nation.

Our statute by its terms would seem to limit the power of the courts to remit the penalty of the bond to a term after the penalty has been adjudged *forfeited.* In the case here the default has been recorded, but there has been no final judgment of forfeiture. However, it was decided in *State* v. *Lambert et al.,* 44 W. Va. 308, 311-312, that though at common law there must be an entry of record of a regular judgment of default and forfeiture, such judgment is dispensed with by our code, which simply requires that the fact of the principal's default be entered, amounting to a modification of the common-law rule.

It is sufficient for the present case to say, in affirmance of the judgment below, that with or without statutes like ours, no court has held that facts such as are set up in the defendants' pleas constituted good grounds for discharge of bail on default of the principal in a recognizance. In *Commonwealth* v. *Craig,* 6 Rand. 731, one of the questions adjourned from the superior court of Montgomery County was whether the crippled and wounded condition of the accused, if true, as sworn to by him, constituted a sufficient excuse for discharging his sureties from their recognizance. The court said of the statute that the discretion given was thereby vested in courts for the obvious purpose of remitting

the obligation in hard cases; and held that if the court of Montgomery County should be satisfied by competent evidence that the recognizor was disabled by his wounds from attending the court, it was reasonable and just that this misfortune should not be visited upon him and his sureties, particularly as by his appearance afterwards the ends of justice would be answered, and in such case the court ought not to award scire facias. But it was decided in answer to another question submitted that the accused was not a competent witness for his sureties to prove such disability.

In another Virginia case, *Caldwell* v. *Commonwealth,* 14 Gratt. 698, it appeared that at the time the principal was required to appear, he was in the penitentiary of the state, convicted of and sentenced for another felony. Afterwards, and before judgment on the scire facias against his bail, his term under the sentence had expired, and he was sent back to the jail of the county in which he was to appear for trial before the circuit court, and was tried and acquitted. Reversing the court below, the Supreme Court of Appeals, opinion by Judge Moncure, held that as the prisoner's confinement rendered it impossible for him to appear at the court at the time required by his recognizance, this fact constituted a good defense for the bail to the scire facias.

In the case of *Taylor* v. *Taintor,* 16 Wall. 336, the recognizance was to appear before a court of Connecticut to answer for a crime committed there. After his release on bail the accused went to New York where he belonged, and while he was there the Governor of New York honored the requisition of the Governor of Maine, and the prisoner was turned over to the authorities of that state for a crime committed there, where he was convicted and imprisoned, and failing to appear in Connecticut in discharge of his recognizance there, these facts were pleaded by his sureties in discharge of their obligation on the bond; and upon writ of error to the judgment of the Supreme Court of Errors of Connecticut affirming the judgment against the sureties, it was held that the facts pleaded constituted no defense. Three of the Justices dissented because of that provision of the Constitution of the

United States, and of the act of Congress pursuant thereto, which made it the duty of chief executive of the state or territory to which a person charged with one of the crimes mentioned has fled, upon proper demand, to cause the fugitive to be arrested and delivered up. But the majority held that these provisions of the federal laws did not apply to a case like the one at hand. The case would have been different if the prisoner had remained in Connecticut, and the Governor of that state had honored the requisition of the chief executive of Maine; then it would have been the act of the state where the principal was recognized to appear, and would have been the act of the obligee in the bond. The dissenting opinion was predicated upon the theory that the Federal Constitution and the acts of Congress are over all and supreme, and that the act of the Governor of New York, in surrendering the prisoner found there to the authorities of the State of Maine, was as much the act of the law as if he had been surrendered by the Governor of Connecticut. But not so according to the majority opinion. The custody of one let to bail is in legal contemplation in his sureties, and if they permit him to escape to another jurisdiction and to be there imprisoned and detained beyond their control, they will not be permitted to set up his detention in the foreign jurisdiction to excuse their default.

In accord with this federal case is *Cane* v. *The State,* 55 Ala. 170, where the exact question we have here was presented, and where it was held that the arrest, conviction and detention of the principal in another state constituted no excuse for the non-performance of the condition of the obligation of the sureties.

Another case exactly like this one is *Yarbrough* v. *Commonwealth,* 89 Ky. 151, where it was held to be no defense to a proceeding upon a forfeited bail bond that at the time of the forfeiture the accused was confined in prison in another state for a crime committed there, he having voluntarily left the state while out on bail.

Another case directly in point is that of *United States* v. *Van Fossen,* 28 Fed. Cas. No. 16,607. Other cases in exact

accord with these cases will be found referred to in 24 Ann. Cas. 1912C, note p. 748. The act of the State of Oregon was not the act of this State; and as was said in the Alabama case, the parties could not have contemplated that the non-performance of the condition of the bond should be excused by the act of any other law than that in reference to which they had contracted.

In construing the statute of North Carolina, as broad as our own, the supreme court of that state, in *State ex rel.* v. *Moody et al.,* 74 N. C. 73, held that the discretion of the court below, where it was lodged, would not be reversed except for some error in matter of law or legal inference. In the case of *Joseph Devine* v. *The State,* 5 Sneed, (Tenn.) 623, it was decided that when a bail is entered into, the prisoner is delivered into the friendly hands of his sureties, in place of being sent to jail, who then have control of his per-. son, and thereby become bound at their peril to keep him within the jurisdiction of the court and have his person ready to surrender when demanded; and that if they negligently permit him to go beyond their reach, it is their own folly and they must abide the consequences.

In view of these decisions what have the defendants submitted calling for their release from the obligation of their bond? The court allowed them to file their plea and affidavits, and we must assume he gave the facts proper consideration. Besides, the facts averred in the plea as above recited, and in the petition and affidavits relied on in support thereof, show that Blake was arrested January 23, 1920; was recognized to appear at the March term of the court, when he was indicted by the grand jury for the offense charged against him; that he failed to appear at that time in discharge of his recognizance; and that his default was then recorded. Where was he at the time of his default, and between that time and May 1920, when the defendants say they learned he was either in the State of Washington or the State of Oregon? Whether or not he was in the State of West Virginia and within the jurisdiction of the court, does not appear; nor does it appear when he left the state and went into the State of Oregon,

where defendants say he was arrested in June, and was afterwards tried and convicted of murder, and sentenced to life imprisonment. Surely Brake's arrest in June was no excuse for his default in March, when he was bound by his recognizance to appear to answer the indictment preferred against him in the circuit court. For aught that appears he may have been in West Virginia and under the surveillance of defendants until just before he left the state. One of defendants' affidavits says that he was interested in their daughter, and that they were induced by her to go on his bond. For anything that we know he may have in some way indemnified them against loss. Their contract with the State was that they would have him forthcoming at the March term of the court to answer the charges against him. They allege nothing and prove nothing showing why they did not then have him in court as their bond provided. The only thing they do allege is that in May they learned he was in the West, but he was not arrested until June following. We do not see, therefore, upon what reasonable ground they can ask discharge in whole or in part from the penalty of their bond. Nothing presented calls for the exercise of any discretion to excuse them, either upon the principles of the common law, or given by the statute; and while this conclusion may result in some hardship to the defendants, they voluntarily assumed the obligation, and the court should not relieve them unless some good grounds for doing so be shown.

The judgment below will be affirmed.

*Affirmed.*