THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORBERT V. BRAUTIGAN *et al.*, Defendants-Appellants.

Fifth District   No. 78-122

Opinion filed December 14, 1979.

Michael B. White, of Hillsboro, for appellants.

Kelly D. Long, State's Attorney, of Hillsboro (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendants Norbert Brautigan and Daniel Soloway appeal from an order of the Circuit Court of Montgomery County forfeiting their bail bonds and entering judgment against each of them for failure to appear at their trial. The principal issue before us is whether defendants' imprisonment in a foreign State excuses their absence and bars forfeiture. We hold that it does not.

Following their arrest, defendants were released after posting 10 percent of their respective $15,000 bail bonds on burglary charges. As conditions of bond, defendants were required, *inter alia*, to appear in the circuit court on such dates as the court ordered, to remain within the State unless permission to leave the State was granted, and to give written notice of any change of address to the clerk of the court within 24 hours. This last condition concerning notification of change in address is a statutory obligation. (Ill. Rev. Stat. 1975, ch. 38, par. 110—12.) While on bond, defendants moved for permission to return to their native State of Kentucky pending trial. In support of their motion, defendants stated that they had no place to stay in Illinois and further represented that "they will appear in Montgomery Circuit Court whenever the court so directs." The motion was granted.

After numerous continuances at which defendants consistently appeared, trial was set for July 21, 1977. On July 20, defense counsel filed a motion for a continuance on grounds that defendant Brautigan had been incarcerated in the LaGrange Reformatory in Kentucky serving a sentence on a conviction occurring prior to his arrest in Illinois and his presence could not be obtained in time for trial the following day. The motion acknowledged that "each of the defendants understands that the reasons for this continuance are their own fault." Over the State's objection, a continuance was granted and the cause was reset for November 17, 1977. On that date defense counsel again moved for a continuance on the basis of Brautigan's imprisonment in Kentucky and Soloway's recent incarceration in Ohio. The State objected to the continuance and moved for an order of forfeiture against each defendant.

During argument on the forfeiture motion, defense counsel agreed with the court's observation that defendants "got themselves where they are through their own endeavoring," but argued that Brautigan was being confined for conduct that preceded the present case and that the presumption of innocence applied to Soloway, thus rendering their incarceration without their fault. The trial court entered interlocutory orders of forfeiture against both defendants but granted continuances. On December 20, 1977, more than 30 days after the entry of the order of forfeiture, the trial court entered judgment for $15,000 against the defendants, pursuant to section 110—7(g) of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 110—7(g)).

Defendants contend that the trial court erred in ordering forfeiture when it knew that they were incarcerated in foreign jurisdictions and were unable to appear of their own volition, especially when the record disclosed a long history of their voluntary appearances and when permission to leave the State had been granted. Defendants further contend that forfeiture was improper because they had not received the required notice and because they were granted a continuance.

We issued a Rule 23 order reversing the trial court's forfeiture order on grounds that the court failed to comply with the notice provisions of the forfeiture statute (Ill. Rev. Stat. 1977, ch. 38, par. 110—7(g)). (People v. Brautigan and Soloway, 5th Dist., No. 78-122, filed March 9, 1979.) The State petitioned for rehearing and moved to supplement the record by including file copies of the forfeiture notices sent to defendants. We granted the State's petition and motion. The State contends that the notices were omitted from the original record on appeal owing to the fault of defendants, who failed to inform the State that this issue might be raised. The State contends that this court's previous ruling constitutes both a mistake of fact and a mistake of law in that notices actually were

sent to the defendants and in that this court reversed the trial court on a point not briefed or argued by the parties.

Upon reviewing the record as supplemented by the State, we find that notices were in fact mailed to the defendants. Brautigan's notice was addressed to his home in Kentucky and returned by the post office as "not deliverable as addressed, no forwarding address on file."

The bond forfeiture statute provides that:

> "If the accused does not comply with the conditions of the bail bond the court having jurisdiction shall enter an order declaring the bail to be forfeited. Notice of such order of forfeiture shall be mailed forthwith to the accused at his last known address. If the accused does not appear and surrender to the court having jurisdiction within 30 days from the date of the forfeiture or within such period satisfy the court that appearance and surrender by the accused is impossible and without his fault the court shall enter judgment for the state * * *." Ill. Rev. Stat. 1977, ch. 38, par. 110—7(g).

■■■ Regarding the sufficiency of notice to defendants of the forfeiture order, we think it significant that defendants failed to notify the clerk of the court of their changes of address as they were required to do by section 110—12 of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 110—12) and by the mandatory condition of their bail bonds. Prompt notice to the clerk of the court of a change in address is indispensable to effective notice; if the defendants fail to provide addresses where they can be reached, they cannot be heard to complain later that notice did not reach them. The record indicates that notice was sent to defendants at the address given by them to the court for the purpose of communication by the court. We regard the statutory scheme as a reasonable one, designed to insure that any notice directed to a defendant admitted to bail will, in fact, be delivered to the defendant. It obviously meets the constitutional requirement of notice reasonably calculated to apprise a defendant of the forfeiture and afford him an opportunity to appear. (See *People ex rel. Hanrahan v. One 1965 Oldsmobile* (1972), 52 Ill. 2d 37, 284 N.E.2d 646.) In fact, regardless of the address to which notice of forfeiture was directed, defendants, who could not appear because of their incarceration, did appear by counsel at all proceedings concerning forfeiture of their bonds, and the nonreceipt of the forfeiture notice was never advanced as an argument in the trial court. We further regard defendants' failure to comply with section 110—12 as a suggestion of fault in the context of their culpability for nonappearance insofar as it evidences their neglect of duty to maintain contact with the court, a matter we shall now address.

Defendants contend that their incarceration made it impossible for them to appear and that their absence was therefore "without fault." This contention has not, to our knowledge, been addressed by courts of Illinois. By statute in some jurisdictions, a defendant's absence is excused if it is attributable to detention by civil or military authority (Cal. Penal Code §1305 (Deering Supp. 1979)), and forfeiture is precluded if the defendant is incarcerated in another State. (La. Rev. Stat. Ann. §15.87 (West 1967).) Our criminal code, however, contains no such exception. The numerous cases cited to us from other jurisdictions concern discharge of sureties when the principal is incarcerated, a separate issue entirely, and the parties concede that there is no unanimity among our sister States on the matter; although, the majority rule holds incarceration in a foreign State does not excuse the failure to appear. (See Annot., 4 A.L.R.2d 440 (1949), and later case service; 8 Am. Jur. 2d *Bail and Recognizance* §187 (1963).) Here we are only concerned with the defendants unconditional promise to appear for trial in the Circuit Court of Montgomery County.

■■ As far as defendant Soloway is concerned, we hold that he violated one of the conditions of his bail bond by going to the State of Ohio without permission of the court and thus need not reach the issue of whether his subsequent incarceration there is a sufficient excuse for his nonappearance. Defendant Soloway was obligated to conduct himself in such a way as not to increase the risk of his nonappearance in the courts of Illinois. By entering the State of Ohio, defendant Soloway submitted himself to the sovereign power of another State to which Illinois must defer and to which the State of Illinois did not consent. As such, this significantly increased the risk of his nonappearance to answer for criminal charges in the State of Illinois, the very purpose for which he was released on bail in the first place, and the court was justified in forfeiting his bond on that ground alone.

■■ With respect to defendant Brautigan, his failure to appear is attributable to his voluntary return to Kentucky. There is no evidence that Brautigan revealed to the trial court that proceedings against him were pending in Kentucky at the time he sought permission to return there, although presumably he knew of the possibility of incarceration. His nondisclosure of these material facts belied his representation to the court that he would appear whenever necessary. Under these circumstances, his incarceration is an aggravating rather than a mitigating factor.

*Williams v. State* (1936), 130 Tex. Crim. App. 124, 92 S.W.2d 1036, held that a defendant's absence caused by imprisonment in a foreign State is not "without fault." In *Williams*, the defendant was confined in the Iowa State Penitentiary when his bond in Texas was forfeited. The Texas forfeiture statute excuses nonappearance for reasons of " '[t]he sickness of

the principal or some uncontrollable circumstance which prevented his appearance at court, and it must, in every such case, be shown that his failure to appear arose from no fault on his part' " (130 Tex. Crim. App. 124, 127, 92 S.W.2d 1036, 1038). Williams' sureties argued that the defendant's incarceration rendered his absence involuntary and rendered the defendant himself inaccessible to the sureties so that his absence was without fault. The court rejected this contention, answering that " * * * it is obvious that if he [the defendant] was confined in the state penitentiary of the State of Iowa, it was his fault and his conduct that put him there, and he and his sureties could not be exonerated from liability by reason of his own act and conduct, which may have made it impossible for him to appear." (130 Tex. Crim. 124, 127-28, 92 S.W.2d 1036, 1038.) For essentially the same reasons, we agree with the trial court in the instant case that defendant Brautigan's incarceration occurred through his own fault and, consequently, so did his absence. Defendants admitted as much in their continuance motion of July 20. If incarceration in a sister State were sufficient to excuse the nonappearance of a defendant, then he could very well render his unconditional promise to appear meaningless by his conduct in another jurisdiction, a matter often under his control.

■ Defendants' final contention is that a forfeiture order is antithetical to a continuance. Defendants construe the continuance as an acknowledgement by the trial court that they would, in fact, appear. We find the inference irrelevant. The continuance was granted so that defendants could exercise their constitutional right to be present at trial and present a defense to the criminal charges. The forfeitures, on the other hand, were ordered because of their failure to appear and did not preclude the continuance.

The judgment of the Circuit Court of Montgomery County is affirmed.

Affirmed.

JONES, P. J., and HARRISON, J., concur.