**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37251**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2010 Opinion No. 79** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: December 7, 2010** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| TWO JINN, INC., | ) |
| | ) |
| Real Party in Interest-Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| BRETT ROBERT BARDSLEY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Order denying motion to set aside forfeiture and exonerate bond, affirmed.

Susan M. Campbell, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Karin D. Jones, Deputy Attorney General, Boise, for respondent.

---

SCHWARTZMAN, Judge Pro Tem

Two Jinn, Inc. appeals from the district court's order denying Two Jinn's motion to set aside forfeiture and exonerate bond, arguing that the district court abused its discretion in concluding that the interests of justice did not require exoneration of the forfeiture of a bond Two Jinn had posted. We affirm.

**I.**

**BACKGROUND**

On December 1, 2008, Brett Robert Bardsley was charged with felony driving under the influence of alcohol, Idaho Code §§ 18-8004, 18-8005(5); driving without privileges, I.C. § 18-8001; and false personation, I.C. § 18-3001. The magistrate court set bail at $10,000, and on

1

December 2, Two Jinn posted a surety bond on behalf of Bardsley. Bardsley was required to wear an alcohol-monitoring device as a term of his bond. At a preliminary hearing on February 24, 2009, the district court denied Bardsley's request that he be permitted to remove the device. Two days later Bardsley stopped paying for the device and downloading its data. As this was a violation of the terms of Bardsley's bond, the prosecutor filed a motion to revoke and increase his bond on March 23, 2009. Bardsley failed to appear in court the following day, March 24, and the court ordered his bond forfeited and a bench warrant was issued.

On July 20, 2009, Two Jinn discovered that Bardsley was in federal custody in San Diego, California.[1] Three weeks later, on August 11, Two Jinn sent a letter to Bardsley requesting that he take action before September 20, 2009, the 180th day after bond forfeiture, to resolve that matter. The next day, Two Jinn notified the court and the Ada County Prosecutor of Bardsley's incarceration in California.

On September 4, 2009, Two Jinn in San Diego, doing business as Aladdin Bail Bonds, posted a bond of $50,000 to obtain the release of Bardsley on the Idaho fugitive warrant. Because Bardsley refused to waive extradition, Idaho began the extradition process on September 16, over a month after Two Jinn had notified the state of Bardsley's California incarceration. On September 18, Two Jinn filed a motion to exonerate the bond in Ada County, two days before the 180th day after the bond forfeiture. On October 13, 2009, Two Jinn "arrested" Bardsley and returned him to the Ada County Jail. A hearing was subsequently held on Two Jinn's motion to set aside the forfeiture and exonerate the bond. The district court thereafter entered a memorandum decision and order denying the motion.

## II.

## DISCUSSION

The decision whether to exonerate bond is committed to the trial court's discretion. *State v. Quick Release Bail Bonds*, 144 Idaho 651, 655, 167 P.3d 788, 792 (Ct. App. 2007). In reviewing a trial court's exercise of discretion we consider whether the lower court correctly perceived the issue as discretionary, acted within the boundaries of such discretion and

---

[1]    Federal authorities had previously arrested Bardsley in Idaho on June 9, where he was housed at the Ada County jail until transported to California to face mail fraud charges.

consistently with applicable legal standards, and reached its decision by an exercise of reason. *Id.*

The district court determined whether the interests of justice required enforcement of the forfeiture pursuant to former I.C. § 19-2927 and former Idaho Criminal Rule 46.[2] Former I.C. § 19-2927 allowed for automatic exoneration if Two Jinn surrendered Bardsley within 180 days after the bond was forfeited. Two Jinn did not surrender Bardsley within this timeframe. However, pursuant to former Idaho Criminal Rule 46(e)(4), a court may set the forfeiture aside in whole or in part if it appears that justice does not require the enforcement of the forfeiture. *Quick Release Bail Bonds*, 144 Idaho at 653, 167 P.3d at 790. In ruling on such a motion the court should consider all relevant factors including:

> (1) the willfulness of the defendant's violation of bail conditions; (2) the surety's participation in locating and apprehending the defendant; (3) the costs, inconvenience, and prejudice suffered by the state as a result of the violation; (4) any intangible costs; (5) the public's interest in ensuring a defendant's appearance; and (6) any mitigating factors.

*State v. Fry*, 128 Idaho 50, 54, 910 P.2d 164, 168 (Ct. App. 1994). *See also Quick Release Bail Bonds*, 144 Idaho at 655, 167 P.3d at 792. These factors are not all inclusive and the court may give weight to other relevant factors including,

> whether the state exhibited any actual interest in regaining custody of the defendant through prompt efforts to extradite him, whether the bonding company has attempted to assist or persuade the defendant to expedite his return to Idaho by exercising his rights under the Interstate Agreement on Detainers, and the need to deter the defendant and others from future violations.

*Quick Release Bail Bonds*, 144 Idaho at 655, 167 P.3d at 792 (citations omitted).

The trial court properly considered all the relevant factors. The court found, and Two Jinn concedes, that it has no evidence to dispute the trial court's finding that Bardsley willfully violated his obligation to appear. As the district court stated, Bardsley's willful violation could not have been more plain as he immediately stopped paying for and downloading information

---

[2] Idaho Code § 19-2927 was replaced by the Idaho Bail Act, I.C. § 19-2901, *et seq.*, effective July 1, 2009, and our Supreme Court revised I.C.R. 46, also effective July 1, 2009. Although Two Jinn discusses both versions of the rule and statute in its brief, Two Jinn concedes that the standard applied is similar under both. Because the relevant standards are substantially the same under both versions for all practical purposes, we will not address this issue further.

3

from his alcohol monitoring device after the court denied his request to remove it; never provided an excuse for his March 24, 2009, failure to appear; and later refused to waive extradition from California to appear before the court in Idaho.

Additionally, although Two Jinn did participate in locating and apprehending Bardsley, it did not locate him until nearly four months after his failure to appear and did not apprehend him until another twelve weeks had elapsed. Furthermore, Two Jinn's California branch granted Bardsley an additional bond in California on September 4, 2009, but did not bring him back to Idaho at that time, which would have been within the 180-day time period for automatic exoneration. It was not until over a month after securing Bardsley's release from federal custody in California, that Two Jinn apprehended and surrendered Bardsley, resulting in a seven-month delay in Bardsley's Idaho proceedings. We are not persuaded that Two Jinn was impeded--in either locating or apprehending Bardsley--by Bardsley's federal arrest. He was not arrested until two and a half months after his failure to appear, Two Jinn in fact located Bardsley while he was incarcerated, and Two Jinn demonstrated by posting Bardsley's bond in California that such arrest did not impede its ability to secure the liberty of Bardsley such that it could bring him back to Idaho.

The state incurred cost and inconvenience in initiating extradition proceedings in addition to the cost and inconvenience of motions and hearings resulting from Bardsley absconding from pretrial supervision and failing to appear. That these costs were not as detailed as Two Jinn would like does not show an abuse of the district court's discretion in placing weight on this factor.

Another factor to be considered is whether the state exhibited any actual interest in regaining custody through prompt efforts to extradite. Even though the state waited a month after Two Jinn notified it of Bardsley's location, the state did in fact initiate extradition proceedings. Two Jinn's argument that the state having Bardsley in custody in June of 2009 and failing to take steps to prevent his removal to California, is unavailing because it is based on an insufficient factual basis. The record Two Jinn relies on in making this argument does not indicate that Bardsley was in the state's custody; the record supports that Bardsley was in the United States Marshal Service's custody, who was simply using the Ada County Jail as a temporary hold. It is Two Jinn's burden to provide a sufficient record to substantiate its claims and in the absence of an adequate record, this Court will not presume error. *State v. Murinko*,

4

108 Idaho 872, 873, 702 P.2d 910, 911 (Ct. App. 1985); *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App. 1991).

We are also not persuaded by Two Jinn's arguments that the district court's determination failed to apply the correct legal standards because it construes statutes in a way that leads to absurd results. A surety's statutory authority to arrest a defendant is not rendered a nullity after the 180-day period following a forfeiture simply because the surety is not entitled to automatic exoneration. The statute Two Jinn refers to, I.C. § 19-2914, only empowers the surety to make an arrest; it says nothing of the consequences on forfeiture. Therefore, as nothing in the district court's decision affects the ability of Two Jinn to make an arrest, it does not render that statute a nullity. Furthermore, it is not an absurd result that Bardsley's temporary incarceration did not outweigh the other relevant factors in the district court's analysis. Incarceration of the defendant in another jurisdiction does not entitle a surety to automatic exoneration, but is merely a factor to be considered by the court. *See Fry*, 128 Idaho at 53-54, 910 P.2d at 167-68. The district court's determination in light of Bardsley's temporary incarceration did not, as Two Jinn contends, "shorten[] the 180-day time period in which to locate a defendant," as indeed, Two Jinn located Bardsley while he was incarcerated in California.

Substantial evidence supports the district court's decision where Bardsley's failure to appear was willful, Two Jinn's efforts to secure Bardsley's presence were overshadowed by its effectuating Bardsley's release in California without a simultaneous attempt to bring him to Idaho, and the state incurred cost and inconvenience. Although Two Jinn did ultimately secure Bardsley's presence, and the state waited over a month after Two Jinn's notice of Bardsley's location to initiate extradition proceedings, we cannot say that the district court abused its discretion when it denied Two Jinn's motion to set aside the forfeiture and exonerate the bond. *See and compare*, *State v. Two Jinn, Inc.*, 148 Idaho 874, 230 P.3d 766 (Ct. App. 2010).

Accordingly we affirm the decision of the district court.

Judge GUTIERREZ **CONCURS.**

Judge GRATTON, **SPECIALLY CONCURRING**

I cannot hold that the district court abused its discretion and, therefore, concur. Two Jinn accepted responsibility for Bardsley's appearances and did not manage to surrender him within the 180-day period. However, I do not agree with certain assertions made by the State and the

district court. A fair review of the record demonstrates affirmative action and ultimate assistance by Two Jinn to the State in producing Bardsley.

First, the district court concluded that "Two Jinn did not find the defendant." This is simply incorrect. The fact that Two Jinn located the defendant while he was in federal custody is of no consequence. As between the State and Two Jinn, relative to Bardsley's failure to appear, Two Jinn located him.

Second, the district court stated that "[t]here was no effort to assist the State with getting the defendant back to Idaho." Two Jinn, in fact, sent a letter to Bardsley on August 11, 2009, requesting that he voluntarily arrange to appear in Idaho by exercising his rights under the Interstate Agreement on Detainers, and provided him with a copy of the Interstate Agreement on Detainers. It is not surprising that the letter was disregarded. However, one of the additional factors for consideration set forth in *State v. Quick Release Bail Bonds*, 144 Idaho 651, 655, 167 P.3d 788, 792 (Ct. App. 2007), is "whether the bonding company has attempted to assist or persuade the defendant to expedite his return to Idaho by exercising his rights under the Interstate Agreement on Detainers." That is what Two Jinn did. Moreover, Two Jinn notified the Ada County Prosecutor of Bardsley's whereabouts on August 12, 2009, who, apparently, proceeded to do absolutely nothing with that information. It was not until the San Diego District Attorney's Office reached out to Ada County in September 2009, that Ada County did anything, and four days prior to the expiration of the 180th day began the process of extradition. The extradition process was cancelled after Two Jinn produced the defendant in October 2009.

Third, the district court stated that "[f]rom the record, there are no mitigating factors." I cannot agree. *In June of 2009, less than ninety days after Bardsley failed to appear, he was in the Ada County Jail.* While the record may be somewhat confusing as to why he was there, the fact is he was. The affidavit submitted by the State indicated that "[i]dentity documents for the Governors warrant were obtained from an arrest on Federal charges for the Internal Revenue Service, by the U.S. Marshal's Service on June 09, 2009, *while housed in the Ada County Jail, Boise, Idaho.*" (Emphasis added.) Whether Bardsley was arrested by the U.S. Marshal's Service while Bardsley was in the Ada County Jail or whether Bardsley was locked up in the Ada County Jail after being arrested and awaiting transport is really of little consequence. In this high-tech world, one would think that a few key strokes by someone at Ada County in regard to someone in its jail would reveal a failure to appear in March and an outstanding warrant. Had

6

that simple event occurred, the warrant could have been served, the prosecutor notified, and the defendant produced before the district court before being shipped off to California. But it did not. One of the other additional factors set out in *Quick Release Bail Bonds* is "whether the state exhibited any actual interest in regaining custody of the defendant through prompt efforts to extradite him." *Id*. Not only did the State not engage in prompt extradition efforts, but it apparently took no interest in determining whether this individual in the Ada County Jail in June 2009 had any outstanding warrants, even from Ada County itself.

Finally, the district court stated that "[t]he State claims there were many costs associated with attempting to extradite the defendant back to Idaho." I fail to see, from the record, just what efforts the State really made and how the State can assert, as it did below, that "at least a dozen government employees" were involved.