2015 VT 81

## State of Vermont v. Joseph Mottolese
## (Allstate Bail Bonds, Appellant)

[124 A.3d 809]

No. 14-245

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

Opinion Filed June 12, 2015

*Alexander Burke*, Bennington County Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*James A. Valente* of *Costello, Valente & Gentry, P.C.*, Brattleboro, for Appellant Allstate Bail Bonds.

¶ 1. **Skoglund, J.** Appellant Allstate Bail Bonds ("Allstate") challenges the trial court's decision granting the State's motion for forfeiture of bond. On appeal, Allstate argues that the trial court abused its discretion in declining to reduce the amount of bail forfeiture when Allstate could not produce defendant due to his

out-of-state incarceration. We agree that Allstate is entitled to a reduction in bail forfeiture, and therefore reverse.

¶ 2. On June 17, 2013, defendant was arraigned for grand larceny and possession of stolen property. Two days later, the court set bail at $35,000. Defendant posted bail on July 2, 2013 through a bond procured from Allstate. Allstate delivered a surety bond for defendant and signed a "Surety Bond" contract with the State, which provides in relevant part:

> In order to secure the defendant's release I/we, the undersigned, do voluntarily agree to act as surety for the defendant and to become firmly bound to the Court to guarantee the appearance of the defendant at all required court proceedings, including execution of sentence. I/We, the undersigned, understand that as surety it is my/our responsibility to know when and where the defendant is to appear.

As a condition of his release, defendant could reside in his home state of New York.

¶ 3. On January 10, 2014, defendant was incarcerated in New York on separate charges. As a result of his incarceration, defendant failed to appear at Bennington Superior Court for final calendar call on February 4, 2014, a required appearance. The next day, the court issued a warrant for defendant's arrest. On March 11, 2014, the State of Vermont filed a motion to forfeit bail due to defendant's failure to appear. See 13 V.S.A. § 7560a(a)(2)(A). A hearing on the motion was held March 25, 2014, but after Allstate suggested it would seek a surety warrant, the court continued the hearing to May. Soon after, Allstate requested a surety warrant, seeking to collect defendant upon release in New York and return him to Vermont. See 13 V.S.A. § 7562. On May 2, 2014, the court denied the request, stating that under *State v. Marsh*, 173 Vt. 531, 789 A.2d 939 (2001) (mem.), the court had no authority to issue a surety warrant when defendant was incarcerated at the time Allstate made its request.

¶ 4. On May 29, 2014, the court held the second hearing on the State's motion to forfeit bail. Again, defendant did not appear due to being incarcerated. Allstate moved for a reduction in forfeiture to an amount consistent with the cost of extradition. See 13 V.S.A.

§§ 7560a(d), 7570.[1] The State contested that a reduction would ignore Allstate's obligation to secure defendant's appearance in court.

¶ 5. On June 17, 2014, the court ordered full forfeiture, finding that defendant's incarceration did not justify relief from forfeiture. It explained that "[i]f the [c]ourt limited the Surety's obligation to paying for transportation costs, then it would leave the State with the burden of finding Defendants and ensuring they attend court proceedings," and "doing so would erode the obligations of the Surety." Allstate appeals the order, requesting return of its forfeited security less the costs of extradition. We reverse the trial court's order because, as we explain below, an examination of the totality of circumstances through factors relevant to forfeiture reveals that denial of a reduction in forfeiture was inappropriate and would not shape the behavior of future bail-bond sureties in a way the Legislature intended.

¶ 6. We review a trial court's decision to forfeit bail for an abuse of discretion. See *State v. Brown*, 2005 VT 104, ¶ 10, 179 Vt. 22, 890 A.2d 79. Abuse of discretion requires a showing that the trial court withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent. *State v. Hutchins*, 134 Vt. 441, 443, 365 A.2d 507, 508 (1976). We must also examine the trial court's interpretation of Vermont's bail statutes

---

[1] Section 7560a(d) of Title 13 provides:

> If the Court finds that the surety has violated the terms of the bond by failing to produce the principal at the hearing or at any other court appearance at which the principal was required to appear, the court shall grant the motion to forfeit the bond. The court may, on motion, or on its own motion, adjust the amount of the forfeiture and order the forfeiture of all or part of the bond amount to the State.

Section 7570 provides:

> A surety may file a motion requesting the return of forfeited bail, bond or any other security at any time after the order of forfeiture is entered. . . . If the court finds the interests of justice would be served by returning all or part of the security, the court may grant the motion and return as much of the security as it deems equitable under the circumstances.

Although the trial court discussed only § 7560a, we examine § 7570 as well because we construe Allstate's counsel's request — at the bail-forfeiture hearing — for less than full forfeiture as equivalent to a motion to remit forfeiture under § 7570.

and correlated case law. On such questions of law, our review is de novo. *In re T.S.S.*, 2015 VT 55, ¶ 15, 199 Vt. 157, 121 A.3d 1184.

¶ 7. This Court has not squarely addressed whether a bail-bond surety is entitled to relief from full liability where a defendant's appearance is prevented by incarceration in another jurisdiction, so we first look to our existing case law on the general rights and responsibilities of bail-bond sureties, and then to other jurisdictions that have answered this precise question.

¶ 8. ▉ We have said that "the sole constitutionally legitimate purpose of monetary conditions of release is to provide 'additional assurance of the presence of the accused.'" *State v. Cardinal*, 147 Vt. 461, 464, 520 A.2d 984, 986 (1986) (quoting *Stack v. Boyle*, 342 U.S. 1, 5 (1951)). Under our policy, forfeiture of bail exists not as a punitive tool, "but rather to assure that the defendant will appear at court when required." *Id.* As such, bail may not be forfeited for breach of conditions other than appearance, 13 V.S.A. § 7560a(f), because doing so "transforms monetary bail from a guarantor of appearance into a potentially punitive tool useful in the enforcement of all bail conditions." *Cardinal*, 147 Vt. at 464, 520 A.2d at 986.

¶ 9. ▉ We assign significant importance to the preservation of the right to bail. "The traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack*, 342 U.S. at 4 (citing *Hudson v. Parker*, 156 U.S. 277, 285 (1895)). The State should encourage bondspersons to enter into bail contracts to facilitate the release of defendants whose guilt has yet to be determined and to relieve the State of the cost of providing for defendants while in jail. On the other hand, reducing the amount of forfeiture where a bail-bond company has failed to ensure a defendant's appearance could erode sureties' obligations, as was the trial court's concern. Balancing these considerations thus requires weighing the particular facts of each case.

¶ 10. This Court's most factually analogous case to the one at hand is *State v. Marsh*, 173 Vt. 531, 789 A.2d 939. There, the trial court scheduled an emergency appearance on one day's notice, which the defendant missed, and the court issued a warrant for his arrest. Texas authorities arrested the defendant later that day. In affirming forfeiture of defendant's bail, this Court maintained that defendant's incarceration in Texas did not prevent him from

appearing at his hearing in Vermont because he was not arrested until hours after his scheduled hearing. *Id.* at 533, 789 A.2d at 942.

¶ 11. We distinguished the surety's position in *Marsh* from that where a defendant is "prevented from appearing [by an] 'act of the law.'" *Id.* (quoting *Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 369 (1872)) (citing *United States v. Egan*, 394 F.2d 262, 265-66 (2d Cir. 1968)). But we did not distinguish between an act of law of Vermont and that of another state. Rather, we implied that if the defendant had been incarcerated in Texas prior to his appearance, the bail-bond surety may have been entitled to relief. *Id.*

¶ 12. It is generally accepted that an act of law of the bailing state that prevents the defendant's appearance entitles the surety to relief from full forfeiture. See, e.g., *Taylor*, 83 U.S. at 369; *Commonwealth v. Stuyvesant Ins. Co.*, 321 N.E.2d 811, 815-16 (Mass. 1975); *State v. Gonzalez*, 174 A.2d 209, 212 (N.J. Super. Ct. App. Div. 1961). There is disagreement, however, as to whether forfeiture is appropriate where the act of law is of another state. Nearly 150 years ago, in *Taylor*, the United States Supreme Court held that the bail-bond surety on a Connecticut appearance bond was not relieved of liability when the defendant voluntarily went to New York, from where he was taken and delivered to Maine authorities. 83 U.S. at 372-73. The Court noted that, had the defendant been delivered to the Maine authorities by the State of Connecticut, the surety would have been released. *Id.* As a strong second ground for its conclusion, the Court emphasized that the bail-bond surety, who retained the authority to control the defendant, negligently allowed him to leave the jurisdiction and place himself beyond its authority. *Id.*

¶ 13. While thirteen states retain the rule under *Taylor* that a bail-bond surety is not entitled to relief from liability where a defendant's appearance is prevented by incarceration in another jurisdiction,[2] more have rejected it. The legislatures of fifteen states have established explicitly by statute that a bail-bond

---

[2] Alabama (See *ABC Bonding Co. v. State*, 641 So. 2d 805, 806-07 (Ala. Civ. App. 1994). But see *Swift v. Esdale*, 306 So. 2d 268, 272-73 (Ala. 1975) (affirming trial court's discretionary decision to remit forfeiture where bondsmen retrieved defendant from out-of-state prison and returned him to custody of bailing state after he had missed court appearance)); Connecticut (*State v. Sheriff*, 21 A.3d 808, 813-14 (Conn. 2011)); Delaware (*State v. Mitchell*, 212 A.2d 873, 885-86 (Del. Super. Ct. 1965)); Illinois (*People v. Brautigan*, 399 N.E.2d 183, 186 (Ill. App. Ct. 1979));

surety is, or at least may be, entitled to relief from liability where a defendant's appearance is prevented by incarceration in another jurisdiction.[3] The courts of another seven states, pursuant to bail statutes similar to ours, have held that sureties were entitled to relief under such circumstances.[4]

---

Maine (*State v. Altone*, 35 A.2d 859, 860-61 (Me. 1944)); Michigan (*People v. McCracken* 161 N.W.2d 758, 759 (Mich. Ct. App. 1968)); Nebraska (*King v. State*, 25 N.W. 519, 526 (Neb. 1885)); New Hampshire (*State v. McGurk*, 44 A.3d 568, 571 (N.H. 2012)); New Jersey (*State v. Fields*, 347 A.2d 810, 811 (N.J. Super. Ct. App. Div. 1975)); North Carolina (*State v. Gonzalez-Fernandez*, 612 S.E.2d 148, 153 (N.C. Ct. App. 2005)); Oregon (*Umatilla Cnty. v. Resolute Ins. Co.*, 493 P.2d 731, 732-33 (Or. Ct. App. 1972) (emphasizing that surety not entitled to relief if incarceration is for crime committed by defendant after his release on bail)); Tennessee (*Wallace v. State*, 269 S.W.2d 780, 784 (Tenn. 1954)); and West Virginia (*State v. Douglas* 112 S.E. 584, 586-87 (W. Va. 1922)).

[3] Arizona (Ariz. R. Crim. P. 7.6(d)(2)); Arkansas (Ark. Code Ann. § 16-84-203(a)); California (*People v. Lexington Nat'l Ins. Corp.*, 105 Cal. Rptr. 3d 469, 473-74 (Ct. App. 2010); Cal. Penal Code § 1305(f)); Florida (*Dolly Bolding Bail Bonds v. State*, 787 So. 2d 73, 73-74 (Fla. Dist. Ct. App. 2001); Fla. Stat. Ann. § 903.26(5)(b)); Georgia (*Stitt v. Busbee*, 220 S.E.2d 59, 59-60 (Ga. Ct. App. 1975) (interpreting prior version of Ga. Code Ann. § 17-6-72(b)); Indiana (*Larkins v. State*, 622 N.E.2d 1299, 1301 (Ind. Ct. App. 1993); Ind. Code Ann. § 27-10-2-12(b)(2)(A)(ii)); Kansas (Kan. Stat. Ann. § 22-2807(3)); Louisiana (*State v. West*, 384 So. 2d 784, 785-86 (La. 1980) (interpreting prior version of La. Code Crim. Proc. Ann. art. 349.9(A)(2)); Maryland (*Irwin v. State*, 302 A.2d 688, 691-92 (Md. Ct. Spec. App. 1973) (interpreting prior version of Md. Rule 4-217(i)(6)); Mississippi (*Wood v. State*, 345 So. 2d 616, 617-18 (Miss. 1977); Miss. Code Ann. § 83-39-7); Montana (Mont. Code Ann. § 46-9-503(4)); Oklahoma (*State v. Mauldin*, 602 P.2d 644, 646-47 (Okla. 1979); Okla. Stat. Ann. tit. 59, § 1332(C)(5)(b)); Texas (Tex. Code Crim. Proc. Ann. art. 22.13(a)(5)); Utah (Utah Code Ann. § 77-20b-104(4) ("[I]f the defendant is in the custody of another jurisdiction and the state extradites or intends to extradite the defendant, the court may reduce the amount forfeited to the . . . costs of returning the defendant to the court's jurisdiction.")); and Virginia (Va. Code Ann. § 19.2-143).

[4] Colorado (*Allison v. People*, 286 P.2d 1102, 1104-06 (Colo. 1955) (en banc), whose rule was later codified in Colo. Rev. Stat. 16-4-110, as recognized by *People v. Haghshenas*, 31 P.3d 180 (Colo. App. 2001)); Hawaii (*State v. Diaz*, 286 P.3d 824, 835 (Haw. 2012)); New Mexico (*State v. Amador*, 648 P.2d 309, 313 (N.M. 1982)); North Dakota (*State v. Williams*, 189 N.W. 625, 626 (N.D. 1922)); Ohio (*State v. Yount*, 2008-Ohio-1155, ¶ 14, 889 N.E.2d 162 (Ct. App. 2008)); Pennsylvania (*Commonwealth v. Roeschetz*, 2 Pa. D. & C.2d 168, 170-71 (Pa. Quar. Sess. 1954) (trial court exercising its discretion to remit forfeiture minus costs of transportation where surety placed detainer against defendant, who was incarcerated out of state)); and Washington (*State v. Heslin*, 389 P.2d 892, 895 (Wash. 1964) (holding that defendant's detainment in different jurisdiction was sufficient explanation to prevent bond forfeiture).

¶ 14. ▮ Federal courts since *Taylor* have taken a multi-factor approach to determinations of bail forfeiture. The relevant federal rules provide that "[t]he court must declare the bail forfeited if a condition of the bond is breached," F.R.Cr.P. 46(f)(1), but that "[t]he court may set aside in whole or in part a bail forfeiture" if "it appears that justice does not require bail forfeiture," F.R.Cr.P. 46(f)(2). The United States Court of Appeals for the D.C. Circuit, in reviewing a substantially similar earlier version of those rules, noted that "[t]he mandatory quality of 46[(f)](1) is . . . considerably tempered by the discretion and flexibility contained in 46[(f)](2)." *United States v. Nell*, 515 F.2d 1351, 1353 (D.C. Cir. 1975). That court found relevant to the exercise of discretion factors such as the willfulness of the defendant's breach, the participation of the bondsperson in locating or apprehending the defendant, and the prejudice suffered by the government by the breach of the bond conditions. *Id.*; see also *United States v. Gambino*, 17 F.3d 572, 574 (2d Cir. 1994) (relying on similar set of factors); *United States v. Abernathy*, 757 F.2d 1012, 1015 (9th Cir. 1985) (same). Federal courts also weigh in favor of relief the fact that a defendant eventually appears. See, e.g., *United States v. Bass*, 573 F.2d 258, 260 (5th Cir. 1978). Indeed, the amount of forfeiture should "bear some reasonable relation to the cost and inconvenience to the government of regaining custody [of the defendant]." *United States v. Kirkman*, 426 F.2d 747, 752 (4th Cir. 1970). Various state courts, interpreting language comparable to that of Rule 46(f), have suggested additional factors, such as the public's interest in ensuring a defendant's appearance and the value of deterrence. See *State v. Fry*, 910 P.2d 164, 168 (Idaho Ct. App. 1994); *Commonwealth v. Hann*, 81 A.3d 57, 67-68 (Pa. 2013) (citing *State v. Korecky*, 777 A.2d 927, 934 (N.J. 2001)); see also *People v. Escalera*, 121 P.3d 306, 308 (Colo. App. 2005); *Ex parte Polk*, 579 S.E.2d 329, 331 (S.C. Ct. App. 2003).

¶ 15. The language of 13 V.S.A. § 7560a is akin to that found in Rule 46(f). The mandatory quality of "*shall* grant the motion to forfeit" is similarly tempered by the discretionary language contained in "[t]he court *may* . . . adjust the amount of the forfeiture." 13 V.S.A. § 7560a(d) (emphases added). And § 7570 mirrors Rule 46(f)(2)(B) almost exactly. In relevant part, it states, "If the court finds the interests of justice would be served by returning all or part of the security, the court may grant the motion and return as much of the security as it deems equitable under the circumstances." *Id.* § 7570.

¶ 16. ▮ We therefore turn to the factors discussed above, but are mindful that no one factor should control. A court's discretion in forfeiting bail "should not be limited by an absolute rule regarding incarceration in another jurisdiction." *Fry*, 910 P.2d at 167 (interpreting statutory language similar to that of Vermont's bail-forfeiture framework). Instead, forfeiture decisions should be based upon an examination of the totality of the circumstances. *Hann*, 81 A.3d at 67 (citing *State v. Torres*, 87 P.3d 572, 583 (Okla. 2004)). Most importantly, these factors can be used only to determine the amount of forfeiture of bail, if any, appropriate to ensure that bail-bond sureties uphold their duties in good faith, and not as a punitive tool. *Cardinal*, 147 Vt. at 466, 520 A.2d at 987.

¶ 17. ▮ ▮ First, we agree with other courts holding that failure to appear due to incarceration is not willful, either on the part of the defendant or the surety, where the incarceration does not result from fleeing the jurisdiction. E.g., *United States v. Nash*, 429 F.2d 533, 534 (8th Cir. 1970); *Diaz*, 286 P.3d at 835. There is no evidence in the record that defendant was on the run or that he would have failed to appear at his hearings in Vermont but for his incarceration at the time he was due to appear. See *State v. Two Jinn, Inc.*, 245 P.3d 1016, 1019 (Idaho Ct. App. 2010) (recognizing ceased payment for alcohol-monitor, failure to download monitor's data, and fleeing to another jurisdiction as evidence of willfulness). While defendant may have knowingly or intentionally committed a criminal act, the consequences of which placed him in a New York jail, the record contains nothing to indicate that his actions in New York were intended to avoid his appearance in the Vermont court. Also, we note, defendant's conditions of release allowed him to reside in New York, his home state. Moreover, as the State conceded at oral argument, Allstate had no duty to supervise defendant — its role, defined by statute and contract, was limited to ensuring defendant appeared in court when required. It would be a perversion of our bail policy, a misreading of the surety-bond contract, and an unreasonable imposition to require a surety to intrude upon the private life of a defendant to such an extent as to monitor his every movement and restrain him from partaking in illegal activity. Thus, the willfulness factor weighs in favor of relief from full forfeiture.

¶ 18. Allstate also attempted to use available procedures to retrieve defendant. There is no evidence of bad faith on the part

of Allstate. The New Mexico Supreme Court considered an apposite case with less favorable facts, and reached the same conclusion with respect to participation and good faith of the surety. *Amador*, 648 P.2d at 313. The bail-bond surety in *Amador* did not know the defendant's whereabouts until well after his nonappearance at trial. It was not until the court served the surety with an order to show cause that the surety first learned of the defendant's failure to appear. When the surety later learned that the defendant was incarcerated in Texas, it offered to pay all reasonable extradition and transportation costs incurred by the state. The court held that the surety did all it could to secure the defendant's presence and insure the state against its monetary loss. *Id.* Further, it held that the state was not unduly prejudiced by the defendant's failure to appear because he could be returned to New Mexico upon release. *Id.*

¶ 19. We find Allstate's subsequent participation and the absence of any disagreement regarding defendant's whereabouts similarly compelling. As evidenced by its request for a surety warrant pursuant to 13 V.S.A. § 7562, Allstate was prepared to take defendant into custody in New York and bring him back to Vermont. However, the State placed a detainer on defendant, and the trial court denied Allstate's request, leaving Allstate powerless to recover him. Even still, throughout the hearings on forfeiture, and on appeal, Allstate offered to defray all costs and expenses involved in returning defendant to Vermont. It was a physical and legal impossibility for Allstate to take possession of him as long as he was incarcerated in New York. See *Allison*, 286 P.2d at 1105. Thus, Allstate's cooperation in attempting to secure defendant's presence in court weighs in favor of relief from full forfeiture.

¶ 20. ■ The prejudice suffered by the State due to defendant's failure to appear was minimal. To be sure, one of the main purposes of a bail agreement between a surety, a defendant, and the State is to ensure that the defendant appears at court when required. *Cardinal*, 147 Vt. at 464, 520 A.2d at 986. Allstate did not fulfill its obligation to produce defendant at the final calendar call and failed to notify the court of his incarceration prior to that appearance. Yet, it is unlikely that anything would have changed had the court known of defendant's incarceration a month earlier. Defendant may well have missed the same hearings, causing the same delays. Thus, the prejudice to the State from his failure to

appear amounts to a short delay in trial proceedings and the expenses associated with extradition.

¶ 21. Finally, we address the trial court's rationale for forfeiting bail and the value of deterrence. The court concluded that reducing the forfeiture amount would leave the State with the burden of finding defendants and ensuring they attend court proceedings. We disagree. First, while it may have been difficult in the past for a bailing state to reobtain custody of a defendant who was incarcerated in another jurisdiction, the modern system of placing detainers against a defendant being held in another jurisdiction has greatly simplified the process of achieving custody. Indeed, the trial court acknowledged that it "will recover Defendant." Secondly, it is important for the court to consider deterrence, but once defendant was incarcerated, Allstate was powerless to ensure his appearance in court. Moreover, Allstate had no duty to supervise defendant. Any forfeiture amount above the costs associated with extradition and delayed trial would therefore serve only to punish Allstate — a result we have long proscribed. *Cardinal*, 147 Vt. at 464, 520 A.2d at 986.

*Reversed and remanded for a calculation of the costs and expenses associated with extradition and delayed trial. Upon calculation, the court shall remit the forfeiture to Allstate less these amounts.*